# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Forfeiture of 2000 GMC Denali and Contents.

---

CITY OF GRAND RAPIDS,

       Plaintiff-Appellee,

v

2000 GMC DENALI AND CONTENTS, and a 2002 YZFR MOTORCYCLE

       Defendants,

and

SHANTRESE KINNON,

       Claimant-Appellant.

FOR PUBLICATION
August 2, 2016
9:05 a.m.

No. 328547
Kent Circuit Court
LC No. 14-010083-CF

---

Before: MURRAY, P.J., and SAWYER and METER, JJ.

MURRAY, P.J.

One of the most important principles contained in our federal constitution is that neither the state nor federal governments can deprive a citizen of their property without first providing that citizen with due process of law. US Const, Ams V & XIV. That principle is put to the test here, where the claimant, Shantrese Kinnon, was precluded from fully challenging the government's seizing of her property, and later declaring it forfeited, without an opportunity to contest the action. Kinnon was unable to contest the seizure and resulting forfeiture of certain property because she could not afford to post the bond required by statute. She now appeals as of right a judgment of forfeiture. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Claimant's husband, Quinton Kinnon ("Quinton"), was arrested after he was seen by Grand Rapids Police Officers Tyler Smith and Lucas Nagtzaam engaging in a hand-to-hand drug transaction with an unidentified person. Upon arrest, Officer Nagtzaam retrieved from Quinton's

-1-

person a bag containing hydrocodone pills. When confronted about the contents of the bag, Quinton told Officer Nagtzaam that the pills were Vicodin that belonged to someone else. Quinton was also in possession of keys to a blue Cadillac, which was subsequently impounded and held for possible forfeiture.

After Quinton was arrested, Officer Ernest Stafford, familiar with Quinton as one of the "main suppliers" of drugs in the area, obtained a search warrant of Quinton's home. When executing the search warrant, officers found in the basement of the house a marijuana growing operation, which lead to the seizure of 19 marijuana plants. In the kitchen, the officers found measuring containers containing crack cocaine residue, two sandwich bags containing marijuana residue, and a sandwich bag containing a quarter ounce of marijuana. While executing the search warrant, officers seized a 2000 GMC Denali, a 1986 Chevrolet El Camino, a 2002 YZFR motorcycle, a Nexus tablet, and a Compaq laptop computer.

As a result of the search of her home, claimant was arrested. Upon claimant's arrest, $398 was seized from her purse. Claimant was subsequently charged with manufacturing marijuana, MCL 333.7401(2)(d)(iii), and maintaining a drug house, MCL 333.7405, while at the same time, Quinton was charged with possession with the intent to deliver a controlled substance, MCL 333.7401, and maintaining a drug house.

Quinton and claimant were served with the required notices of plaintiff's intent to forfeit the property that was seized. See MCL 333.7523(1)(a). Quinton did not post a bond on any of the property, and after 20 days of receiving the notice, any interest he held in the items seized was administratively forfeited. See MCL 333.7523(1)(d). Claimant, however, did post a bond, but not the full amount to contest all the seized property. To be able to contest the validity of the forfeiture on all the property, claimant was required to post a $2,005 bond, but, according to claimant, she could only afford to post a bond of approximately $1,100, as a result of her indigency. Detective Preston informed claimant that because she did not have sufficient funds to contest all of the seized property, she would have to select items that she could afford to contest. As a result, claimant did not post a bond for the Cadillac, which required an additional $1,020 bond.

More than 20 days after claimant received her notice, plaintiff filed a complaint for forfeiture asserting that the 1986 El Camino, the 2000 GMC Denali, the motorcycle, the Compaq laptop computer, the Nexus tablet, and the $398 in cash were subject to forfeiture because the items were used or intended to be used to facilitate, or were proceeds from, a violation of the Controlled Substances Act, MCL 333.7201 et seq.

After denying the allegations in the complaint and obtaining counsel, claimant filed a motion to intervene seeking to add the Cadillac to the proceedings on the basis that the bond requirement denied her access to the courts and that she was denied an opportunity to be heard because she could not afford the bond requirement. Claimant also asserted that the bond requirement violated equal protection because it allows individuals with resources to contest forfeitures, while denying those without financial resources such an opportunity. Claimant requested that she be allowed to contest the forfeiture of her Cadillac without posting a bond.

In response, plaintiff argued that Michigan's civil asset forfeiture scheme was constitutional. Specifically, plaintiff relied on *People v Any and All Monies*, unpublished

opinion per curiam of the Court of Appeals, issued November 12, 1996 (Docket No. 185677), for the proposition that the statute did not infringe on an indigent claimant's right to due process or equal protection. In addition, plaintiff asserted that while the Michigan statute does not have a waiver of the bond requirement, a claimant may still petition the court to waive the bond requirement pursuant to MCR 2.109.[1]

The trial court heard arguments on claimant's motion to intervene and, relying on *Any and All Monies*, held that the forfeiture statute was constitutional. The trial court subsequently entered an order denying claimant's motion to intervene.

The case then proceeded to trial, and after receiving evidence and entertaining arguments, the trial court found that plaintiff failed to establish a connection between the criminal activity and the $398 in cash found in claimant's purse at the time of her arrest, the El Camino, the Compaq laptop computer, and the Nexus tablet. On the other hand, the trial court found that a significant nexus existed between the underlying criminal activity and the Denali and the motorcycle. In addition, the trial court found that the innocent owner defense was inapplicable because claimant was not the owner of the vehicles and because she had knowledge of the criminal activity. The trial court thereafter entered a judgment of forfeiture, forfeiting the 2000 GMC Denali and the motorcycle. This appeal then ensued.

## II. ANALYSIS

### A. CONSTITUTIONALITY OF MICHIGAN'S CIVIL ASSET FORFEITURE SCHEME

Claimant asserts that the trial court abused its discretion in denying her motion to intervene, because in doing so, she was denied due process and equal protection of the law.[2] More specifically, she argues that Michigan's bond requirement, as applied to her, deprived her of her property rights in the 2006 Cadillac without according her an opportunity to be heard solely because she could not afford the statutorily required bond.

### 1. CONSTITUTIONAL REVIEW

A party challenging the constitutionality of a statute has the burden of proving the law's invalidity. *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 414-415; 878 NW2d 891 (2015). The challenging party must overcome a heavy burden as "[s]tatutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014). When interpreting a statute, our

---

[1] Plaintiff never questioned claimant's inability to pay the full bond amount.

[2] This Court reviews for an abuse of discretion a trial court's decision on a motion to intervene. *Vestevich v West Bloomfield Twp*, 245 Mich App 759, 761; 630 NW2d 646 (2001). This case also presents constitutional issues and issues of statutory interpretation, both of which are reviewed de novo. *Midland Cogeneration Venture Ltd Partnership v Naftaly*, 489 Mich 83, 89; 803 NW2d 674 (2011).

primary goal is to "give effect to the intent of the Legislature." *Superior Hotels, LLC v Mackinaw Twp*, 282 Mich App 621, 628; 765 NW2d 31 (2009). To do so, we examine the plain language of the statute itself, and if the language of the statute is clear and unambiguous, the statute must be enforced as written; no further judicial construction is permitted. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013).

A constitutional challenge to the validity of a statute can be brought in one of two ways, either a facial or an as-applied challenge. This is an as-applied challenge, meaning that claimant has alleged " 'a present infringement or denial of a specific right or of a particular injury in process of actual execution' of government action." *Bonner v City of Brighton*, 495 Mich 209, 223 n 27; 848 NW2d 380 (2014), quoting *Village of Euclid v Ambler Realty Co*, 272 US 365, 395; 47 S Ct 114; 71 L Ed 2d 303 (1926). "The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative." *Ada v Guam Soc'y of Obstetricians and Gynecologists*, 506 US 1011, 1012; 113 S Ct 633; 121 L Ed 2d 564 (1992) (SCALIA, J., dissenting). See also *United States v Frost*, 125 F3d 346, 370 (CA 6, 1997).[3]

## 2. MICHIGAN'S FORFEITURE LAW

Under Michigan's civil asset forfeiture scheme, "a conveyance"—which includes a "vehicle"—"that is used or intended for use, to transport, or in any manner to facilitate the transportation, for the purpose or receipt of [a controlled substance]" is subject to forfeiture. MCL 333.7521(1)(d). Property that is subject to forfeiture may be seized without process when it is seized incident to a lawful arrest or pursuant to a search warrant. MCL 333.7522(a). When property is seized without process, and the total value of the property seized does not exceed $50,000, the local unit of government that seized the property shall notify the owner of the property that the property has been seized and that the local unit of government intends to forfeit

---

[3] According to the Court in *Wash State Grange v Wash State Republican Party*, 552 US 442, 450-451; 128 S Ct 1184; 170 L Ed 2d 151 (2008), "[f]acial challenges . . . run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' " *Ashwander v TVA*, 297 US 288, 346-347; 56 S Ct 466; 80 L Ed 688 (1936) (BRANDEIS, J., concurring), quoting *Liverpool, New York & Philadelphia SS Co v Comm'rs of Emigration*, 113 US 33, 39; 5 S Ct 352; 28 L Ed 899 (1885). Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that " '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.' " *Ayotte v Planned Parenthood of Northern New Eng*, 546 US 320, 329; 126 S Ct 961; 163 L Ed 2d 812 (2006), quoting *Regan v Time, Inc*, 468 US 641, 652; 104 S Ct 3262; 82 L Ed 2d 487 (1984) (plurality opinion).

and dispose of the property by delivering a written notice to the owner of the property or by sending the notice to the owner by certified mail.[4]  MCL 333.7523(1)(a).

Within 20 days after receiving the notice, any person claiming an interest in the property must file a written claim and a bond in the amount of 10% of the value of the claimed property with the local unit of government, but the bond may not be less than $250 or greater than $5,000. MCL 333.7523(1)(c).  When a claim and bond are posted, the prosecuting attorney "shall promptly institute forfeiture proceedings after the expiration of the 20-day period."  *Id*. However, when no claim is filed or when no bond is given within the 20-day period, the "local unit of government shall declare the property forfeited."  MCL 333.7523(1)(d).  By force of the statute, the only means of obtaining a judicial hearing is to file a written claim asserting an interest in the property and to post a bond.  *In re Return of Forfeited Goods*, 452 Mich 659, 667; 550 NW2d 782 (1996).  As such, posting a bond is a condition to obtain a judicial hearing regarding the forfeiture of seized property.

## 3.  PROCEDURAL DUE PROCESS

That the founding fathers were concerned with protecting private property rights from government interference is beyond dispute.  " '[O]ur founding fathers and their contemporary patriots were as much interested in protecting citizens' private property rights against encroachment by government as they were in liberty itself.' "  *United Artists Theater Circuit Inc v Philadelphia*, 528 Pa 12, 25; 595 A2d 6 (1991), quoting *First Presbyterian Church of York v City Council of the City of York*, 25 Pa Commw 154, 164; 360 A2d 257 (1976) (KRAMER, J., concurring).  Accord: *WJF Realty Corp v State of New York*, 176 Misc 2d 763, 764; 672 NYS 2d 1007 (1998) ("At the time of our Revolution, one of our Founding Fathers specifically declared the commonly held belief that, '[t]he right of property is the guardian of every other right, and to deprive the people of this, is in fact to deprive them of their liberty,' (Belz, *Property and Liberty Reconsidered*, 45 Vand L Rev 1015, 1016-1017 [1992], citing Ely, The Guardian of Every Other Right, at 26 [Oxford 1992], quoting Lee, An Appeal to the Justice and Interests of the People of Great Britain, in The Present Dispute with America, at 14 [4th ed 1775]").  John Adams succinctly declared that "[p]roperty must be secured, or liberty cannot exist."  Kaselonis, *The Greater Good?  Can the Good v United States Court Be Any Further Off*, 15 Regent U L Rev 253, 264 (2003), quoting John Adams, *The Works of John Adams* 9 (Boston, Little & Brown, 1851), p 281.

Because of the important role property rights have always played in our society, Alexander Hamilton (along with James Madison and John Jay) wrote the Federalist Papers in part to inform the citizenry of the "additional security, which . . . [the Constitution's] adoption will afford to the preservation of . . . property."  *The Greater Good?*, 15 Regent U L Rev at 264, quoting The Federalist No 1 (Hamilton).  One of the constitutional provisions intended to

---

[4] If the name and address of the owner are not reasonably ascertainable, or delivery of the notice cannot be reasonably accomplished, the notice shall be published in a newspaper of general circulation in the county in which the property was seized for 10 successive publishing days. MCL 333.7523(1)(a).

preserve private property rights against government encroachment is the Due Process Clause. See *Block v Hirsh*, 256 US 135, 165; 41 S Ct 458; 65 L Ed 865 (1921) (McKenna, J., dissenting) ("The security of property next to personal security against the exertions of government is of the essence of liberty. They are joined in protection, as we have shown, and both the national government (Fifth Amendment) and the states (Fourteenth Amendment) are forbidden to deprive any person 'of life, liberty or property, without due process of law. . . .' "); *US v Twelve Thousand, Three Hundred Ninety Dollars*, 956 F2d 801, 810 (CA 8, 1992) ("From its inception, the Constitution recognized the importance of private property as a concomitant to liberty. The Fifth Amendment embodies the Lockean belief that liberty and the right to possess property are an interwoven whole; neither life, liberty, nor property can be arbitrarily or capriciously denied us by government.").

The Due Process Clause of the Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law . . . ." US Const Am XIV. While courts have expanded this language by interpreting it to contain a substantive component, see, e.g., *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014), our inquiry revolves around the original purpose of the Due Process Clause—the procedural requirements meant to protect persons "from the mistaken or unjustified deprivation of life, liberty, or property." *Zinermon v Burch*, 494 US 113, 125-126; 110 S Ct 975; 108 L Ed 2d 100 (1990). In order to comply with the procedural requirements of the Due Process Clause, "individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *US v James Daniel Good Real Property*, 510 US 43, 48; 114 S Ct 492; 126 L Ed 2d 490 (1993). See also *United States v $8,850*, 461 US 555, 562 n 12; 103 S Ct 2005; 76 L Ed 2d 143 (1983) and *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 313; 70 S Ct 652; 94 L Ed 2d 865 (1950). "The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property. . . ." *Fuentes v Shevin*, 407 US 67, 80-81; 92 S Ct 1983; 32 L Ed 2d 556 (1972).

Due process concerns arise when state legislatures condition access to the courts on posting a bond or paying a filing fee. See, e.g., *MLB v SLJ*, 519 US 102, 113, 120; 117 S Ct 555; 136 L Ed 2d 473 (1996) (Due Process "prohibit[s] a State from denying, solely because of inability to pay, access to its courts" when a judicial proceeding is necessary to vindicate a fundamental right.). More specifically, while "[t]he State may erect reasonable procedural requirements for triggering the right of an adjudication, be they statutes of limitations, or, in an appropriate case, filing fees," *Logan v Zimmerman Brush Co*, 455 US 422, 437; 102 S Ct 1148; 71 L Ed 2d 265 (1982), "a cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard." *Boddie v Connecticut*, 401 US 371, 380; 91 S Ct 780; 28 L Ed 2d 113 (1971).

The Supreme Court has confronted, in diverse settings, the mandates of the Due Process Clause with regard to an opportunity to be heard. With respect to laws requiring a payment of costs or fees to enter the courts, *Boddie* is a foundational case. In that case, the appellants, welfare recipients residing in Connecticut, did not have the ability to pay the court fees and costs, as required by statute, to file their lawsuit for a divorce. *Id*. at 372-373. As a result, the appellants sued the state challenging the requirements for payment of court fees and costs as a condition to access the court. *Id*. at 372.

In deciding the fee statute unconstitutional as applied to the appellants, the United States Supreme Court explained that due process requires, at a minimum, "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest" and that a cost requirement to filing a lawsuit, "valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard." *Id*. at 379-380. Recognizing that ensuring due process is central to the operation of a system that is designed to resolve the settlement of disputes, *id*. at 375, the Court noted that resort to the state courts was the only avenue to dissolve a marriage and that defendants were excluded—by way of the filing fees—from the only forum effectively empowered to settle their dispute. *Id*. at 376. The Court further articulated that "[r]esort to the judicial process by these plaintiffs is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court. For both groups this process is not only the paramount dispute-settlement technique, but, in fact, the only available one." *Id*. at 376-377.

Two years later, in *United States v Kras*, 409 US 434, 435; 93 S Ct 631; 34 L Ed 2d 626 (1973), the Court considered a constitutional challenge to the filing fees required for a no-asset bankruptcy proceeding. *Id*. In *Kras*, an indigent petitioner filed both a voluntary petition for bankruptcy and a motion to proceed in bankruptcy without payment of any of the filing fees. The motion, supported by an affidavit of indigency, was granted. *Id*. at 438-439. However, while the referee allowed the petitioner to conduct the necessary proceedings in bankruptcy, it did not allow the discharge of his debts without payments of the fees. *Id*. at 439.

On appeal, the petitioner argued that his case was governed by *Boddie*, because payment was required as a condition precedent to his discharge in bankruptcy. *Id*. at 441. The Court rejected the petitioner's argument for several reasons. First, the Court determined that there was no fundamental interest that is gained or lost depending on the availability of a discharge in bankruptcy. *Id*. at 445. Second, the Court noted that bankruptcy is not the sole method available to a debtor for the adjustment of his debt with his creditors, and unlike the termination of a marriage, such readjustment of debts does not require access to a state's judicial machinery. *Id*. Lastly, the Court recognized that there was no constitutional right to obtain a discharge of one's debts in bankruptcy. *Id*. at 446.

That same year, in *Ortwein v Schwab*, 410 US 656; 93 S Ct 1172; 35 L Ed 2d 572 (1973), the Court considered due process and equal protection challenges to a mandatory $25 filing fee to appeal an adverse decision from a state welfare agency. Relying on *Boddie*, the appellants contended that the appellate filing fee, when applied to indigents like them seeking to appeal an adverse welfare decision, violated the Due Process Clause of the Fourteenth Amendment. *Id*. at 658. In concluding that the appellants were not denied due process, the court relied on two factors. First, the Court explained that the appellants' claims did not implicate a fundamental constitutional right. *Id*. at 659. Specifically, the Court stated that appellants' interest in increased welfare benefits "has far less constitutional significance than the interest of the *Boddie* appellants." *Id*. Second, the Court noted that each of the appellants received an agency hearing and that due process does not require a state to provide an appellate system. *Id*. at 659-660.

While *Boddie*, *Kras*, and *Ortwein*, do not discuss the constitutionality of a bond requirement related to civil asset forfeiture, they nevertheless provide some insight into how our nation's highest court has addressed statutes dealing with mandatory filing fees and an opportunity to be heard. In addition, those cases set the stage for *Wiren v Eide*, 542 F2d 757 (CA

-7-

9, 1976), a case directly on point involving a bond requirement in a civil asset forfeiture scheme.[5]

In *Wiren*, the plaintiff, when returning from Canada, was stopped and searched at the U.S. border. *Id.* at 759. A body search of one of the passengers revealed a small quantity of hashish. *Id.* Customs agents seized the plaintiff's car on the basis that it was used to transport contraband into the United States, in violation of 19 USC 1595a(a). *Id.* The plaintiff claimed he had no knowledge of the hashish and, because the civil asset forfeiture scheme allowed remission and mitigation proceedings,[6] he petitioned the Secretary of Treasury for the remission or mitigation of the impending forfeiture of his car. *Id.* The petition was denied. *Id.* at 760.

The plaintiff was subsequently informed of the government's intention to forfeit his vehicle. *Id.* The letter informed the plaintiff that his vehicle was appraised at less than $2,500. *Id.* The federal statutory forfeiture scheme at the time provided owners of seized property valued at more than $2,500 the opportunity for a judicial hearing, but when the property was valued at less than $2,500, a judicial hearing was afforded only if the property owner filed a claim and posted a $250 bond. *Id.* In the event that the required bond was not posted, the property was summarily forfeited pursuant to 19 USC 1609. *Id.* at 761, 763.

The plaintiff filed a claim in accordance with 19 USC 1608, but did not post the requisite $250 bond. *Id.* According to the plaintiff, he was indigent and could not afford the bond. *Id.* Because there was no statutory procedure for the plaintiff to call his indigent condition to the attention of the Bureau of Customs and no procedure for him to halt the summary forfeiture mandated by 19 USC 1609, the plaintiff filed a cause of action and filed a motion to proceed *in forma pauperis*,[7] which was accompanied by an affidavit of poverty. *Id.* Nevertheless, the trial court denied the plaintiff's motion to proceed *in forma pauperis*. *Id.*

On appeal, the plaintiff challenged the trial court's denial of his motion to proceed *in forma pauperis*, asserting that he was denied due process. The *Wiren* court held that the case was most similar to *Boddie* because the application of the bond requirement operated to deprive the appellant of a significant property interest without according him the opportunity for a hearing "of some sort." *Id.* at 764. The court held that the remission or mitigation proceeding was an inadequate substitute to a hearing because, in those proceedings, the granting of relief is purely a matter of "administrative grace." *Id.* Absent a purely voluntary remission or mitigation, the sole remedy of a claimant is a court judgment that forfeiture is inappropriate. *Id.* Lastly, and importantly for purposes of our case, the court rejected the argument that the waiver of fee

---

[5] Federal court of appeals decisions, while not binding, may be considered for their persuasive value. *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

[6] Although Michigan's Civil Asset Forfeiture Scheme does not contain provisions regarding remission or mitigation proceedings, they are not necessary to a forfeiture determination and are thus not constitutionally required. *US v Von Neumann*, 474 US 242, 250; 106 S Ct 610; 88 L Ed 2d 587 (1986).

[7] Latin for "in the manner of a pauper." *Black's Law Dictionary* (10th ed).

provisions for indigent persons contained in 28 USC 1915(a) afforded an indigent a means of obtaining relief from the bond requirement because that section solely applied to court proceedings and the forfeiture statute precluded court proceedings by mandating summary administrative forfeiture. *Id*. Ultimately, the court held that due process prohibits the "government from denying the opportunity for a hearing to persons whose property has been seized and is potentially subject to forfeiture solely because of their inability to post a bond." *Id*. at 763. Because the court determined that the instant application of the bond requirement operated unconstitutionally to deprive the plaintiff of the opportunity for a hearing, the court vacated the trial court's opinion and remanded the matter to the trial court to provide the plaintiff a hearing. *Id*. at 764.[8]

Turning now to claimant's contention, we hold that the State's bond requirement effectively denied claimant the opportunity to be heard. Claimant is essentially put in a position similar to that of "the defendant called upon to defend his interests in court," in that her resort to the courts is not entirely voluntary, and it is the only available means to resolve her dispute. Under state law, when a claimant's property is seized, the sole remedy available to a claimant is a judicial determination that the seized property was not, in fact, subject to forfeiture, which can only be sought by posting the statutorily required bond. MCL 333.7521(2) and MCL 333.7523(1)(c). And when a claimant is unable to post the bond, the seized property is administratively forfeited. MCL 333.7523(1)(d). Thus, similar to the appellant's in *Boddie* whose only method to obtain a divorce was resort to the courts, the only avenue available to claimant was to post the statutorily required bond and then seek to obtain a judgment declaring that her property was not subject to forfeiture. In addition, there are no "effective alternatives" for claimant to pursue to have her car returned to her. *Boddie*, 401 US at 785. Because of her indigency and inability to pay the required bond, claimant was excluded "from the only forum effectively empowered to settle [her] dispute." *Boddie*, 401 US at 376; See also *Wiren*, 542 F2d at 763. Therefore, we hold that application of the bond requirement operated to deprive claimant of a significant property interest without an opportunity for a hearing. *Wiren*, 542 F2d at 763.

Plaintiff suggests that claimant was given an opportunity to be heard because she potentially could have obtained a waiver of the bond requirement by filing a complaint that (1) asserted her indigency and (2) sought an injunction preventing the administrative forfeiture of her car and a waiver of the bond requirement. Plaintiff's argument is without merit for two reasons. First, the civil asset forfeiture scheme precludes claimant from filing a lawsuit for the return of seized property, MCL 333.7523(2), and in addition, a circuit court does not have jurisdiction to hear a forfeiture proceeding if the bond is not posted and the action is not commenced by the attorney general or local governmental unit. *In re Return of Forfeited Goods*, 452 Mich at 667 (posting a bond, which triggers the government's obligation to initiate forfeiture proceedings, "is the *only* means by which the statute confers jurisdiction on the circuit court.").

---

[8] See also *Fell v Armour*, 355 F Supp 1319, 1333-1334 (MD Tenn, 1972) (holding that Tennessee forfeiture statute containing no waiver for indigents challenging a seizure violates the plaintiff's right to due process of law); *Brown v District of Columbia*, 115 F Supp 3d 56, 72 (D DC, 2015) (recognizing that "bond waivers for indigent individuals are a necessary element of a constitutionally valid forfeiture system.").

Second, plaintiff's procedural suggestion is not anticipated by the current statutory scheme. *Wiren*, 542 F2d at 764. As stated in *City of West Covina v Perkins*, 525 US 234, 241; 119 S Ct 678; 142 L Ed 2d 636 (1999), "[o]nce the property owner is informed that his property has been seized, he can turn to these public sources," i.e. statutes and case law, "to learn about the remedial procedures available to him." When turning to the public sources in Michigan, a claimant will see that the only remedial procedure available is a judicial determination that his property is not subject to forfeiture, which can only be triggered by the filing of a written claim and the posting of a bond. MCL 333.7523(1)(c); *In re Return of Forfeited Goods*, 452 Mich at 667. The statutory scheme does not set forth any remedial procedure with regard to obtaining a waiver of the bond requirement. We therefore reject plaintiff's argument.

We also reject plaintiff's contention that the waiver provisions of MCR 2.109(B)(1) allow an indigent claimant the opportunity to request a waiver in connection with the forfeiture proceedings. That court rule applies solely to court proceedings, MCR 2.001, and because under the civil asset forfeiture statute a failure to post a bond mandates that the property is forfeited after 20 days, the failure to post a bond precludes the very court proceedings in which the court rule could be applied. See *Wiren*, 542 F2d at 764.[9] In other words, because claimant could not file a bond, she could not get into court, and therefore could never seek to invoke the waiver provisions of MCR 2.109(B)(1). MCR 2.001 (court rules only apply to court proceedings). Simply put, the waiver provisions of MCR 2.109(B)(1) were unavailable to claimant at the time she was required to post the bond.[10]

---

[9] While an unpublished decision may be considered for its persuasive reasoning, *Beyer v Verizon North, Inc*, 270 Mich App 424, 431; 715 NW2d 328 (2006), the decision in *Any and All Monies* is not persuasive as applied to this case as it fails to recognize that MCR 2.109(B)(1) may only be utilized in court proceedings *that will never be instituted* when property is administratively forfeited as a result of a claimant's inability to post the required bond. Furthermore, *Any and All Monies* relies on *Derrick v Detroit*, 168 Mich App 560, 563; 425 NW2d 154 (1988), for the proposition that the statute is constitutional. However, *Derrick* did not involve an indigent claimant that was deprived of an opportunity to be heard. For this same reason, the unpublished opinion in *Langston v Charter Twp of Redford*, 623 F Appx 749 (CA 6, 2015), provides no assistance because it relied upon the reasoning of *Any and All Monies*.

[10] Because the *Wiren* court held that the waiver provisions of 19 USC 1915(a) were not available to the claimant, the Customs Service amended its implementing regulations to allow an indigent claimant to obtain a waiver of the bond requirement from the seizing governmental unit. *Jones v US Drug Enforcement Admin*, 801 F Supp 15, 23 (MD Tenn, 1992). 19 CFR 162.47(e) provides: "Waiver of bond. Upon satisfactory proof of financial inability to post the bond, the Fines, Penalties, and Forfeitures Officer shall waive the bond requirement for any person who claims an interest in the seized property." Since *Wiren*, several courts have recognized that this type of provision is necessary to comply with the constitutional protections afforded to indigent claimants. See *In re Williams*, 628 F Supp 171, 173 (ED NY, 1978) ("*In forma pauperis* provisions [in a forfeiture statute] are thus constitutionally mandated for the indigent."); *Tourus Records, Inc v Drug Enforcement Admin*, 347 US App DC 262, 267; 259 F 3d 731 (2001) (19 CFR 162.47(e) was adopted in response to *Wiren*, and the waiver of the bond is an important

-10-

Lastly, plaintiff rests on the fact that at the motion hearing, the prosecutor was personally aware of at least two other claimants in other cases that obtained a waiver of the bond requirement. As noted above, there is no indication that such a procedure was accessible to claimant in the statutory scheme. In order for claimant to take advantage of such a procedure, "if it existed at all, [claimant would have] depended on the 'vagaries of word of mouth referral,' " *Memphis Light, Gas & Water Div v Craft*, 436 US 1, 14 n 14; 98 S Ct 1554; 56 L Ed 2d 30 (1978), which is insufficient to satisfy due process as this is not a public source in which a claimant can turn "to learn about the remedial procedures available to him." *City of West Covina*, 525 US at 241.

Ultimately, Michigan's civil asset forfeiture scheme operated to deprive this claimant of a significant property interest without according her the opportunity for a hearing, contrary to the requirements of the Due Process Clause.[11] This holding does not render MCL 333.7523(1)(c) & (d) unconstitutional. Instead, those provisions as applied to plaintiff violate her constitutional right to due process of law.

## B. TRIAL COURT'S FACTUAL FINDINGS

Claimant also challenges the trial court's factual findings regarding claimant's property interests in the Denali and the motorcycle. A circuit court's findings of fact are reviewed for clear error. *CG Automation & Fixture, Inc v Autoform, Inc*, 291 Mich App 333, 337; 804 NW2d 781 (2011). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Massey v Massey*, 462 Mich 375, 379; 614 NW2d 70 (2000).

In order to forfeit the property, the trial court was required to find by clear and convincing evidence that the Denali and the motorcycle were "used or intended for use, to transport, or in any manner to facilitate the transportation, for the purpose of sale or receipt of [a controlled substance.]" MCL 333.7521(1)(d) and (2). In addition, the trial court was required to find that there was a substantial connection between that asset and the underlying criminal activity. *In re Forfeiture of $1,159,420*, 194 Mich App 134, 146; 486 NW2d 326 (1992). Property that only has an incidental or fortuitous connection to the unlawful activity is not subject to forfeiture. *Id*. The power to forfeit property is also limited by MCL 333.7521(1)(d)(ii), which establishes the "innocent owner" defense as follows: "A conveyance is not subject to forfeiture by reason of any act or omission established by the owner of that conveyance to have been committed or omitted without the owner's knowledge or consent."[12] Innocent ownership is an affirmative defense, so the burden is on the claimant to produce

---

means of affording equal access to judicial forfeiture hearings and the right to proceed as an indigent).

[11] Having determined that claimant was denied due process of law, it is unnecessary to address her equal protection argument.

[12] MCL 333.7521(f) also provides in pertinent part: "To the extent of the interest of an owner, a thing of value is not subject to forfeiture under this subdivision by reason of any act or omission that is established by the owner of the item to have been committed or omitted without the owner's knowledge or consent."

evidence that he neither had knowledge nor consented to the illegal activity forming the basis for forfeiture. *In re Forfeiture of $53*, 178 Mich App 480, 486-487; 444 NW2d 182 (1989); *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App at 250. In the context of the forfeiture statute, our Court has interpreted the word "knowledge" to "not include the concept of constructive knowledge." *Id*. at 252. However, a claimant's consent may be implied from the circumstances even without knowledge. *Id*. at 252-253.

Here, the trial court found that the Denali and the motorcycle were subject to forfeiture, and this finding was not clearly erroneous. Officer Stafford's testimony established more than a substantial connection between the underlying activity and the Denali and the motorcycle. Officer Stafford testified that he was familiar with Quinton as a drug dealer in the area and that he had seen Quinton in the area in a Denali and on a motorcycle while dealing drugs. Therefore, the trial court's factual finding that the Denali and motorcycle were subject to forfeiture was not clearly erroneous as there was a substantial connection between the underlying criminal activity and the property.

Claimant also contends that the trial court erred when it found that claimant was not an innocent owner. Specifically, claimant argues that the trial court erred when it failed to find that claimant was the owner of the Denali and motorcycle. Our Court has previously defined the term "owner" with regard to the innocent owner defense as: "The person in whom is vested the ownership, dominion, or title of property; . . . He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases." *In re Forfeiture of $53*, 178 Mich App at 493.

The trial court clearly erred in finding that claimant did not have an ownership interest in the Denali and the motorcycle. Evidence was presented that title to the vehicles was in claimant's name. Although claimant signed the title of the Denali and the motorcycle with the intent of transferring them to Quinton, Quinton was required to sign the title in order to complete the transfer of title. See MCL 257.233(9) ("the effective date of the transfer of title of interest in the vehicle is the date of signature on either the application for title or the assignment of the certificate of title by the purchaser, transferee, or assignee"); See also *Perry v Golling Chrysler Plymouth Jeep, Inc*, 477 Mich 62, 66-67; 729 NW2d 500 (2007) (holding that transfer of a vehicle is complete at signing). The record is devoid of any evidence that Quinton signed the title. Thus, the evidence did not support that the transfer of the vehicles was complete, and, as a result, claimant retained legal title, making her the owner of both vehicles. *In re Forfeiture of $53*, 178 Mich App at 493. Accordingly, the trial court's finding that claimant was not the owner of the vehicles was clearly erroneous.

Although the trial court clearly erred in finding that claimant had no property interest in the Denali and the motorcycle, the trial court nonetheless found that claimant had actual knowledge of Quinton's criminal activity. This finding is not clearly erroneous, and defeats her claim that she was an innocent owner. As in *People v One 1979 Honda*, 139 Mich App 651, 654; 362 NW2d 651 (1984), the innocent owner defense pertinent to this case is set forth in MCL 333.7521(1)(d)(ii), which provides: "A conveyance is not subject to forfeiture by reason of any act or omission established by the owner of that conveyance to have been committed or omitted without the owner's knowledge or consent." Evidence was presented that claimant admitted to officers that she knew marijuana plants were being grown in the basement of her house, and that she had seen defendant mixing cocaine and baking soda in the kitchen (to make crack cocaine).

-12-

Claimant also admitted that she knew Quinton was "hanging out in the streets." In addition, when Quinton called claimant from jail, claimant, without being prompted, asked Quinton if he had the whole bags of pills, indicating that she had knowledge of the pills. On that same call, Quinton requested that claimant "check the corn in the cabinet," to which claimant agreed that she would.[13] While claimant testified that she did not have knowledge of the underlying drug activity, the burden was on claimant to prove that she neither had knowledge nor consented to the illegal activity. *In re Forfeiture of $53*, 178 Mich App at 486; *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App at 250. The trial court, as the assessor of credibility, apparently did not believe claimant's testimony. Therefore, the trial court's finding that claimant had actual knowledge of the underlying criminal activity was not clearly erroneous, and defeats her argument on appeal that she was an innocent owner.

Affirmed in part, reversed in part and remanded for further proceedings. We do not retain jurisdiction. No costs, neither party having prevailed in full. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Patrick M. Meter

---

[13] Testimony was presented that the term "Corn" refers to crack cocaine when it's mixed with marijuana.