*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HERON COVE ASSOCIATION, et al.,

Plaintiffs-Appellants,

v

MIDLAND COUNTY BOARD OF
COMMISSIONERS, GLADWIN COUNTY
BOARD OF COMMISSIONERS, and FOUR
LAKES TASK FORCE,

Defendants-Appellees.

UNPUBLISHED
January 06, 2025
11:24 AM

No. 371649
Midland Circuit Court
LC No. 2024-002751-AA

Before: BORRELLO, P.J., and MALDONADO and WALLACE, JJ.

PER CURIAM.

Appellants appeal by right the circuit court's order denying their appeal seeking relief from the special assessment on their real property. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case concerns the procedures for maintaining normal inland lake levels and the associated funding through special assessments, as outlined in Part 307 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30701 *et seq.* Part 307 of the NREPA was previously known as the Inland Lake Level Act (ILLA). The ILLA was repealed in 1994 and reenacted without substantial change as Part 307 of the NREPA in 1995 (*In re Project Cost & Special Assessment Roll for Chappel Dam*, 282 Mich App 142, 145 n 1; 762 NW2d 192 (2009)). This regulatory framework is still sometimes interchangeably referred to as the ILLA, and we will generally refer to it as such in this opinion unless quoting a source that uses a different term.

The fundamental facts of this case are largely indisputable. In 2018, the Midland County Board of Commissioners and the Gladwin County Board of Commissioners appointed the Four Lakes Task Force (FLTF) as their "delegated authority" to oversee the maintenance of normal lake levels for Wixom Lake, Sanford Lake, Smallwood Lake, and Secord Lake (collectively referred to as the "Four Lakes") and the Four Lakes Special Assessment District. On May 28, 2019, the circuit court issued an order setting the normal lake levels for the Four Lakes and confirming the

boundaries of the Four Lakes Special Assessment District. In May 2020, two of the four dams responsible for maintaining the water levels of the lakes failed, resulting in catastrophic flooding.

It was ultimately determined that repairing, improving, and replacing the four dams to restore the Four Lakes would cost approximately $399,700,000. The FLTF secured over $200,000,000 in federal and state grants for the project and assessed that about 55% of the costs would be covered through special assessments levied on property owners in the Four Lakes Special Assessment District. The special assessment for lake-level maintenance would be collected in annual installments over forty years, totaling approximately $217,700,000. Additionally, the FLTF created a separate special assessment roll to cover the operational and maintenance expenses for the Four Lakes system from 2025 to 2029.

A public hearing was held on January 15, 2024, where objections to the special assessments could be made, and the counties approved the special assessments and their corresponding rolls on February 6, 2024. Appellants filed a claim of appeal in the circuit court on February 20, 2024, contesting the counties' decisions from February 6, 2024, which approved the "Resolution Approving Four Lakes Special Assessment District 5-Year Operation and Maintenance Project Cost and Operation and Maintenance Assessment Roll, and Capital Improvement Project Cost Special Assessment Roll." The Appellant, Heron Cove Association, described itself as representing property owners on or near the Four Lakes and within the Four Lakes Special Assessment District. The individual appellants are members of the Heron Cove Association who own or are interested in properties within the special assessment district. The appellants challenge the levying and distribution of the special assessments, arguing that the counties' decisions were not authorized by law and were not supported by competent, material, and substantial evidence overall.

Appellants contended that the counties' decisions were not legally authorized because construction on the dam improvements began before the cost and special assessment rolls were approved by resolution, violating MCL 324.3014(3). They further argued that the special assessments were improper because the properties owned by the appellants received little to no special benefit or increase in market value from the assessment, beyond what the community as a whole received. They cited *Kadzban v City of Grandville*, 442 Mich 495; 502 NW2d 299 (1993), to support this claim. Additionally, they argued that the assessment amounts imposed on their properties were grossly disproportionate to the increase in market value attributable to the improvements, constituting a taking of property without due process of law, as established in *Dixon Road Group v City of Novi*, 426 Mich 390; 395 NW2d 211 (1986). They maintained that this represented an unconstitutional taking of property without just compensation. The appellants requested that the circuit court vacate the special assessment rolls and order a reapportionment so that the assessments would align more closely with the increase in market value resulting from the improvements.

In response, the circuit court issued a written opinion and order denying the appellants' appeal for relief from the special assessment apportionment. The court determined that the appellants had been afforded all procedural due process protections required by the ILLA and *Chappel Dam*. It ruled that the FLTF's development of the special assessment rolls and the subsequent approval by the county boards of commissioners were legally authorized, as both fully complied with the relevant statutory provisions in the ILLA.

-2-

With regard to the proportionality of the assessments, the circuit court concluded that the appellants did not fulfill their obligation to rebut the presumption of validity associated with municipal special assessment decisions. The court emphasized that the appellants failed to provide evidence demonstrating how the value of their properties was influenced by the improvements in comparison to their value prior to those improvements. Furthermore, the court analyzed the evidence presented by the appellants and articulated the reasons why it did not effectively contest the presumption of validity:

> Appellants have failed to demonstrate an unreasonable disproportionality between the amounts of their assessments in comparison to the benefit derived to overcome the rebuttable presumption in favor of validity. Appellants attempt to show disproportionality by selecting twelve parcels of property within the SAD [out of a total of over 800 parcels included in this appeal] and providing their state equalized values (SEVs) for years 2019 through 2024, compared to the assessment to be levied on each property as approved by the Gladwin County and Midland ·County Boards of Commissioners. Appellants argue this data shows "the loss of the Four Lakes does not appear to have substantially decreased property values within the [special assessment district]. The data also shows that the values of many properties has increased substantially in the last few years without the Project." . . .

> However, close examination of these select properties by Appellants does not adequately support the asserted argument of disproportionality even assuming the SEVs provided are reflective of the true fair market value of those identified properties. Four of the twelve parcels chosen by Appellant had SEVs that went down between 2020 (year of the floods) and 2021, three parcels don't have any data shown for the 2020 SEV so they cannot be compared, and two don't have any data shown for 2021 (the year after the lakes disappeared). A majority of the state equalized values for these twelve properties did increase between the years of 2021 and 2023. Coincidentally, or perhaps not, this is the same time frame when permits were being sought to rebuild the dams and restore the lakes to their prior levels. Additionally, in December 2022 contracts for the restoration of Secord and Smallwood dams were awarded for work to commence. Any increase in value may be attributable to the restoration of the dams project beginning or simply fluctuations in the real estate market, but it certainly does not show a "substantial or unreasonable disproportionality" between the market value of the property before the restoration of the dams and the value of the property based upon completion of the project for raising the water level of the lakes. *Kadzban*, 442 Mich at 502. Appellants stated in their own brief, "the relevant comparison is not between the market value of the assessed property after the improvement and the market value of the assessed property before the improvement . . ." because such a "comparison measures the effect of time." *Ahearn v Bloomfield Charter Twp*, 235 Mich App 486, 496-97; 597 NW2d 858 (1999). At best, Appellant's data, which presumably is the best they have to offer for purposes of this appeal, is inconclusive and does not show the special assessments are disproportional as presented for the record on appeal.

Similarly, the record provided on appeal does not offer any evidence to show disproportionality. There is a dearth of credible evidence provided within the numerous objections filed with the FLTF how the methodology is disproportionate to the benefit derived from the restoration of the water level for the four lakes affected. "[T]he question whether and how much the value of land has increased as the result of certain improvements is factual, to be determined on the basis of evidence presented by the parties." *Kadzban*, 442 Mich at 502. Appellants have failed to present such evidence either in the hearings before Appellees or to this Court on appeal to overcome the rebuttable presumption for a valid special assessment apportionment. [Bracketed material other than last alteration in original; second ellipsis in original.]

This appeal followed.

## II. STANDARD OF REVIEW

Our standard of review in this case is limited. The underlying special assessment decisions that appellants appealed to the circuit court were made following public hearings, which are not adversarial hearings akin to judicial proceedings. *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 86; 832 NW2d 288 (2013). For purposes of the ILLA, the "delegated authority" may approve the cost of the project or the special assessment roll "[a]t or after a public hearing," MCL 324.30714(3), and "[t]he special assessment roll with the assessments listed shall be final and conclusive unless appealed in a court within 15 days after county board approval," MCL 324.30714(4). For purposes of the ILLA, "court" means the "circuit court." MCL 324.30701(c).

"When the agency's governing statute does not require the agency to conduct a contested case hearing, the circuit court may not review the evidentiary support underlying the agency's determination," and "[j]udicial review is limited in scope to a determination whether the action of the agency was authorized by law." *Natural Resources Defense Council*, 300 Mich App at 87 (quotation marks and citation omitted). Thus, it follows that our review of the circuit court's decision is also limited to determining "whether the action of the agency was authorized by law." See *id.* (quotation marks and citation omitted). "Courts review de novo questions of law, including whether an agency's action complied with a statute." *Id.* at 88. "The agency's action was not authorized by law if it violated a statute or constitution, exceeded the agency's statutory authority or jurisdiction, materially prejudiced a party as the result of unlawful procedures, or was arbitrary and capricious." *Id.* at 87-88.

Whether a statutory scheme violated a litigant's right to procedural due process presents a question of constitutional law that we review de novo. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). "Every reasonable presumption or intendment must be indulged in favor of the validity of the act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity." *Bonner v City of Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014) (quotation marks and citation omitted). "A party challenging the constitutionality of a statute has the burden of proving the law's invalidity." *In re Forfeiture of 2000 GMC Denali & Contents*, 316 Mich App 562, 569; 892 NW2d 388 (2016).

-4-

III. ANALYSIS

It is a "well-settled principle that municipal decisions regarding special assessments are presumed to be valid." *Kadzban*, 442 Mich at 502, citing *In re Eight and One–Half Mile Relief Drain*, 369 Mich 641, 649; 120 NW2d 789 (1963); *Crampton v Royal Oak*, 362 Mich 503, 514-516; 108 NW2d 16 (1961). "A special assessment will be deemed valid if it meets two requirements: (1) the improvement subject to the special assessment must confer a benefit on the assessed property and not just the community as a whole and (2) the amount of the special assessment must be reasonably proportionate to the benefit derived from the improvement." *Michigan's Adventure, Inc v Dalton Twp*, 290 Mich App 328, 335; 802 NW2d 353 (2010). A "determination of the increased market value of a piece of property after the improvement is necessary in order to determine whether or not the benefits derived from the special assessment are proportional to the cost incurred." *Dixon Rd*, 426 Mich at 401. As this Court has explained:

> Common sense dictates that in order to determine whether the market value of an assessed property has been increased as a *result* of an improvement, the relevant comparison is not between the market value of the assessed property *after* the improvement and the market value of the assessed property *before* the improvement, but rather it is between the market value of the assessed property with the improvement and the market value of the assessed property *without* the improvement. [*Michigan's Adventure*, 290 Mich App at 335 (quotation marks and citation omitted).]

However, a court's task when reviewing the validity of a special assessments is not "to determine whether there is 'a rigid dollar-for-dollar balance between the amount of the special assessment and the amount of the benefit . . . .' " *Kadzban*, 442 Mich at 502, quoting *Dixon Rd*, 426 Mich at 402-403 (ellipsis in original). "Rather, a special assessment will be declared invalid only when the party challenging the assessment demonstrates that 'there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements.' " *Kadzban*, 442 Mich at 502, quoting *Dixon Rd*, 426 Mich at 403.

The appellants argue on appeal that the special assessments are "per se invalid" because the methodology used to determine the improvements did not consider the public benefits of the improvements or ensure that the required proportionality was achieved. However, the appellants fail to cite any evidence from the record that compares the market value of the assessed properties before and after the improvements. As noted in *Michigan's Adventure*, 290 Mich App at 335, the appellants only discuss the state-equalized value for property tax purposes of 12 selected properties out of the approximately 800 properties involved in this appeal. This evidence measures the impact of time rather than the impact of the improvements, as previously explained by this Court in greater detail:

> The essential question is not whether there was any change in market value, but rather whether the market value of the assessed property was increased as a result of the improvement. . . . Common sense dictates that in order to determine whether the market value of an assessed property has been increased as a result of an improvement, the relevant comparison is not between the market value of the

assessed property *after* the improvement and the market value of the assessed property *before* the improvement, but rather it is between the market value of the assessed property *with* the improvement and the market value of the assessed property *without* the improvement. *The former comparison measures the effect of time, while the latter measures the effect of the improvement.* [*Ahearn*, 235 Mich App at 496-497 (last emphasis added).]

Appellants assert that the appellees did not present sufficient evidence to substantiate the allocation of costs between the general public and those funded by special assessments. Nevertheless, the appellants appear to misinterpret the presumption of validity that is inherent in municipal special assessment decisions, as detailed in *Kadzban*, 442 Mich at 502. It is the obligation of the appellants to provide credible evidence that effectively challenges this presumption prior to the evidentiary burden shifting to the appellees, as articulated in *Id*. at 505: "Thus, to effectively challenge special assessments, plaintiffs, at a minimum, must present credible evidence to rebut the presumption that the assessments are valid." Without such evidence, there is "no basis to strike down special assessments." The trial court correctly held that appellants failed to demonstrate an unreasonable disproportionality between the amounts of their assessments in comparison to the benefits derived to overcome the rebuttable presumption in favor of validity, i.e., pursuant to *Kadzban*, appellants failed to demonstrate that there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the repair, improvement, and replacement of the four dams to restore the Four Lakes.

The appellants assert that they were deprived of their procedural due process rights due to a lack of opportunity to present evidence before an independent fact-finder or to gather essential evidence. They argue that the statutory timeframe for contesting special assessments under the ILLA was insufficient for them to collect the requisite evidence to support their challenges. Additionally, they contend that they were entitled to a comprehensive evidentiary hearing concerning the special assessments in question.

To comply with the procedural requirements of the Due Process Clause, individuals must receive adequate notice and an opportunity to be heard before the government deprives them of property, as noted in *In re Forfeiture of 2000 GMC Denali & Contents*, 316 Mich App 562, 573; 892 NW2d 388 (2016) (with quotation marks and citation omitted). Furthermore,

"[i]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." [*Bonner*, 495 Mich at 235, quoting *Mathews v Eldridge*, 424 US 319, 334-335; 96 S Ct 893; 47 L Ed 2d 18 (1976).]

This Court has previously dismissed an argument substantially similar to the one presented by the appellants in the current appeal. In the case of *Chappell Dam*, this Court evaluated the

appeal concerning a special assessment roll that had been established in accordance with the provisions of the ILLA. *Chappell Dam*, 282 Mich App at 145. This Court stated:

> Petitioners also assert . . . that the review process used in this case deprived them of their constitutional right to due process of law, in that they should have had an opportunity to develop facts and to cross-examine the drain commissioner about the decision she made. What kind of hearing is due depends on the interests involved. . . . The right to due process of law is a flexible concept and must be analyzed by considering the particular circumstances presented in a given situation. . . .
>
> The ILLA guarantees notice and an opportunity to be heard before the determination of a special assessment roll. MCL 324.30714. This Court has determined that the hearing contemplated under the ILLA does not require a full trial. In *In re Van Ettan Lake*, [149 Mich App 517, 526-527; 386 NW2d 572 (1986)], this Court determined that the interests being protected by a hearing under the ILLA are those of the public being apprised of governmental actions and having an opportunity to present opposing viewpoints. This Court explained that the focus of the act is clearly on the public welfare, and not on individual riparian rights, because its purpose is to authorizes counties to make policy decisions about inland lake levels, and build and finance dams as necessary to maintain the desired lake levels. . . .
>
> For purposes of the ILLA, a sufficient hearing is one that (1) allows the circuit court to ensure that the county has considered the varying public interests in reaching its policy decision and (2) protects the public against arbitrary governmental action. . . . Here, all interested persons were properly notified of the hearing regarding the special assessment roll. A hearing was held at which petitioners registered their protests and the reasons for protesting, and the commissioner explained and took questions about her apportionment. The petitioners then had an opportunity to be heard at the county commissioners' meeting in which the roll was approved. Lastly, petitioners presented their arguments in a trial brief and at the hearing on the motion before the circuit court. The court considered all the evidence and welcomed any pertinent information in the parties' briefs. Opportunity to be heard was provided, and the court then decided that there was sufficient evidence to support the commissioners' decision. Accordingly, petitioners were not denied their constitutional rights to due process of law. [*Chappel Dam*, 282 Mich App at 150-151.]

The record indicates that the process for establishing the special assessment commenced in 2021, with opportunities for public commentary and engagement beginning in 2022. This process culminated in a public hearing on January 15, 2024, during which property owners were afforded the opportunity to articulate their objections to the special assessment and present supporting documentation. The records demonstrate that a minimum of 780 adjustments were made to the special assessment roll based on public input, predominantly reflecting the benefits accrued by individual properties.

Contrary to the assertions made by the appellants, they were not entitled to a process that closely resembles a judicial trial or a comprehensive evidentiary hearing. The appellants seem to contend that the Legislature ought to have established an alternative process that would have been more satisfactory to their preferences. However, as stated in *Proctor v. White Lake Township Police Department*, 248 Mich App 457, 462; 639 NW2d 332 (2001), "[a]rguments that a statute is unwise or results in bad policy should be addressed to the Legislature." A litigant's perception that a statute may be unwise or unjust does not, in itself, establish that the statute violates constitutional principles.

Affirmed. No costs are awarded to either party, a public question being involved. MCR 7.216(A)(7) and MCR 7.219(A). *City of Bay City v Bay Co Treasurer*, 292 Mich App 156, 172; 807 NW2d 892 (2011).

/s/ Stephen L. Borrello
/s/ Allie Greenleaf Maldonado
/s/ Randy J. Wallace