*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAUREL NEFF,

        Plaintiff-Appellant,

v

CHAPEL HILL CONDOMINIUM ASSOCIATION,
MICHAEL A. MIXER, FARMERS INSURANCE
EXCHANGE, and MID-CENTURY INSURANCE
COMPANY,

        Defendants-Appellees,

and

NORTHERN RESTORATION SERVICES, INC.,
doing business as SERVICEMASTER DISASTER
SERVICES, JABO INCORPORATED, doing
business as ROTO-ROOTER SEWER AND DRAIN
CLEANING SERVICE, FARMERS GROUP, and
FARMERS INSURANCE COMPANY,

        Defendants.

UNPUBLISHED
January 14, 2021

No. 349444
Washtenaw Circuit Court
LC No. 17-000383-CZ

LAUREL NAMY, Individually and as a
Representative of CHAPEL HILL CONDOMINIUM
ASSOCIATION,

        Plaintiff-Appellant,

v

DANIEL MILLER, JAMES BARNES, MATTHEW
BURROWS, DANA FAIR, JOHN HAGEN,
BARBARA JONES, MICHAEL MIXER,

No. 349976
Washtenaw Circuit Court
LC No. 18-001228-NZ

CATHERINE ROGLITZ, MIRIAM SHAW, and
JOSEPH SOMERS,

        Defendants-Appellees,

and

DOES 1-5,

        Defendants.

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

This consolidated appeal[1] involves contentious litigation between plaintiff, Laurel Neff (or Namy), and her condominium association, its board members, and their insurers, related to an October 2016 flooding incident in the basement of plaintiff's condominium unit. In Docket No. 349444 (the 2017 case), plaintiff appeals by right the trial court order granting summary disposition for defendants Mid-Century Insurance Company and Farmers Insurance Exchange under MCR 2.116(C)(8).[2] In Docket No. 349976 (the 2018 case), plaintiff appeals by right the trial court's order re-assigning the case to another circuit court judge. Because there are no errors warranting reversal, we affirm.

I. BASIC FACTS

Plaintiff is the co-owner of a condominium unit within the 425-unit Chapel Hill condominium development. Defendant Chapel Hill Condominium Association is a nonprofit corporation established in 1969 under the Michigan Condominium Act and is governed by its Master Deed, Bylaws, Articles of Incorporation and other applicable Michigan laws. Under its Bylaws, Chapel Hill is responsible for maintenance of common elements, which includes the condominium's plumbing network and sanitary sewer and storm drain systems.

On the evening of October 22, 2016, plaintiff discovered that water was flooding her basement through a drain in the floor. An adjacent neighbor was also experiencing flooding in her basement and had called Chapel Hill's maintenance line. Maintenance arrived and after changing the sump pump in the neighbor's unit, recommended that plaintiff contact Roto-Rooter. When Roto-Rooter arrived, the technician snaked the drain and discovered a blockage caused by

_____

[1] *Neff v Chapel Hill Condominium Ass'n*, unpublished order of the Court of Appeals, entered September 25, 2019 (Docket Nos. 34944 and 349976).

[2] For ease of reference, defendants Mid-Century Insurance Company and Farmers Insurance Exchange will be jointly referred to as "Mid-Century."

feminine products; after the blockage was cleared, the water began to recede. Plaintiff promptly made a claim with her homeowner's insurance company.

Two days later, plaintiff informed Chapel Hill that she would be submitting bills for reimbursement of her insurance deductible and "any damages/expenses that go beyond what insurance can cover." In mid-November, plaintiff submitted a follow-up letter claiming $24,620 in damages. Chapel Hill indicated that it would consider her claim, and it filed a claim on plaintiff's behalf with Mid-Century. Ultimately, after plaintiff revised her losses to $36,954, Mid-Century issued Chapel Hill a check for approximately $8,000. Chapel Hill tendered that check to plaintiff, but plaintiff rejected it. Mid-Century issued an additional check for $4,314, which plaintiff also rejected. In April 2017, plaintiff's lawyer sent Mid-Century a demand for $380,000, which Mid-Century denied outright.

In May 2017, plaintiff filed a complaint against, in relevant part, Chapel Hill, Michael Mixer (Chapel Hill's board president), and Mid-Century. While Mid-Century was dismissed from the case almost immediately on their MCR 2.116(C)(8) motion, the litigation between plaintiff and Chapel Hill and Mixer was arduous and burdened by copious filings and discovery disputes.

For example, plaintiff filed discovery requests in June 2017, but did not serve them on Chapel Hill or Mixer. Later, plaintiff filed a motion against Chapel Hill and Mixer for sanctions for failing to respond. The court denied the request because plaintiff had failed to serve requests for written discovery on Chapel Hill and Mixer. Then, in November 2017, plaintiff timely submitted her witness list per the court's scheduling order. Yet, plaintiff's list did not name any expert witnesses. It was not until a little over a week before discovery was set to close and four months past the deadline for naming witnesses, that plaintiff, without moving for leave, filed a supplemental witness list naming three expert witnesses. Another discovery issue related to plaintiff's deposition, which was repeatedly postposed by plaintiff.

Chapel Hill and Mixer moved to strike the experts listed in plaintiff's supplement list, and the court granted the motion, noting that experts could be struck for failure to follow the scheduling order and that it had authority to manage its docket. Subsequently, the parties stipulated to a date for plaintiff's deposition. Plaintiff, however, sought yet another postponement by filing a motion for an ex parte protective order. At the May 2018 hearing on this motion, plaintiff asked the court to reconsider its order striking her experts and made allegations that Chapel Hill's board had conspired for "decades" to abdicate their duty to fix ongoing maintenance problems and was retaliating against homeowners who would otherwise assist plaintiff. With respect to the new allegations, the court noted that they were unsubstantiated and irrelevant to the motion at issue. The court also explained that it had struck plaintiff's experts because plaintiff "failed or refused to provide anything other than their names and qualifications prior to the close of discovery despite numerous requests for a report, a summary of what they are expected to opine about[.]" The court denied reconsideration of the order striking the experts, stated that plaintiff should move to amend the complaint if she was able to substantiate any additional claims, and ordered that plaintiff's deposition take place before June 15th.

Several days later, plaintiff moved to amend the complaint. She alleged that Chapel Hill had been negligent in its maintenance of common elements for decades and had conspired with its insurer and Roto-Rooter to fraudulently conceal the real cause of the sewer backing up, i.e., the failure to maintain common elements related to foundations, grading, and drainage issues. The trial court granted leave to amend the complaint to add four additional claims and directed plaintiff to file the amended complaint on or before June 15, 2018.

One day later, on June 14, 2018, the parties proceeded with plaintiff's deposition. Plaintiff's lawyer, however, directed plaintiff not to answer any questions relating to the new claims because the amended complaint had not yet been filed. The next day, plaintiff filed the amended complaint and asked the court to reconsider its ruling regarding expert witnesses. Chapel Hill and Mixer then moved to dismiss the entire case or, in the alternative, to strike the newly-added causes of action. The court granted Chapel Hill and Mixer's request to strike the new claims, stating that such action was

> entirely appropriate in this case where you were in here on Wednesday asking permission to add those causes of action; the deposition occurred on Thursday and you didn't allow her to answer [questions related to those causes of action]; and then added those counts on Friday. And I don't care whether you had—whether those were causes of action that existed in the Complaint at all. The defendants are entitled to inquire of anything that's not privileged, and this is a gross abuse of the discovery process to instruct your client not to answer questions about potential claims.

The court denied the motion for reconsideration as to plaintiff's expert witnesses, pointing out that plaintiff had not brought a proper motion and that no new information had been presented.

Approximately a week later, Chapel Hill and Mixer moved for summary disposition. By mid-August, plaintiff had filed her response. Because trial was scheduled less than a week away and there was a pending motion to strike factual allegations in the second amended complaint, the court moved the trial date to December and ordered nonbinding facilitation. The order required facilitation to occur on or before November 30, 2018 and provided:

> Plaintiff shall submit names of three proposed facilitators to defendants on or before August 23, 2018. Defendants shall either choose one of the three proposed by plaintiff, or shall advise the court, on or before August 30, 2018, that they do not choose any of plaintiff's facilitators, and shall provide the court with the three names submitted by plaintiff as well as three facilitators agreeable to both defendants. The court will then choose among the six facilitators. The cost of mediation shall be shared equally, either three ways or two ways, pending motions for summary disposition.

Plaintiff did not abide by the court's order; instead, plaintiff e-mailed one name to defendants' lawyer and moved for an order appointing that facilitator. Defendants filed the names of three facilitators, and, after a hearing on plaintiff's motion, the court ordered plaintiff to submit the names of three facilitators. Plaintiff eventually filed a list including the names of three facilitators.

On October 10, 2018, the court granted summary disposition on plaintiff's claims of unjust enrichment, breach of fiduciary duty, and negligence, but denied summary disposition on the contract claim. At the same hearing, the circuit court appointed Barry Feldman (one of the facilitators named by plaintiff) as facilitator.

Facilitation proceeded on the contract claim, but it was a grueling process. Feldman proposed an inspection of plaintiff's unit, but plaintiff objected until the court entered an order mandating the inspection. Plaintiff also refused to serve her facilitation summary (claiming nearly two million dollars in damages) on Chapel Hill and Mixer, and only did so at Feldman's insistence. Then, on the day of the court-ordered inspection, plaintiff forbade an inspection of the attic despite claiming damages related to it. The parties twice agreed upon different dates to complete the inspection, but plaintiff never showed up. Later, during the facilitation hearing, plaintiff made assertions and arguments related to the dismissed claims and threatened to file a grievance against Feldman. On the second day of facilitation, plaintiff threatened to sue Feldman and left. Ultimately, plaintiff refused to pay Feldman for his services.

On November 27, 2018, plaintiff filed a new claim (the 2018 case) related to the facilitation process. This time, she named herself, individually and as a representative of Chapel Hill, and named Mixer and its board members as defendants, as well as Chapel Hill's general manager, Daniel Miller. Plaintiff asserted claims of breach of the Bylaws, among others. Plaintiff initially filed the 2018 case in Washtenaw County Business Court, but because that court found it was not the proper forum, the case was re-assigned to the same judge presiding over the 2017 case.

On November 28, 2018, in the 2017 case, Chapel Hill and Mixer, moved to dismiss plaintiff's remaining contract claim or, alternatively, to require a surety bond under MCR 2.109. In their motion, they outlined plaintiff's obstructive conduct at facilitation, as well as their view that plaintiff had failed to raise a single recoverable claim for damages because the claims were already either dismissed, barred by the Bylaws, or without a supporting legal basis. Chapel Hill and Mixer maintained that they had incurred over $65,000 in fees and costs because of plaintiff's "recalcitrant handing of this case." Before the hearing on the motion to dismiss or for security, plaintiff filed three motions and a complaint seeking a writ for superintending control. The first motion sought a stay of the 2017 case pending the outcome in the 2018 case; the second sought sanctions against Chapel Hill and its lawyer in the 2017 case; and the third sought to disqualify defendants' lawyer in both the 2017 and 2018 Cases. The complaint for a writ of superintending control asked this Court to assert control over the entire Washtenaw County Trial Court and to disqualify the entire bench from hearing the 2018 case.[3] Additionally, plaintiff moved to dismiss the trial judge in the 2018 case, based on the judge's alleged personal knowledge of fraud during the facilitation. Around the same time period, Chapel Hill and Mixer filed a motion to dismiss in the 2018 case.

The trial judge denied plaintiff's motion to disqualify her in the 2018 case, referred the matter to the Supreme Court Administrative Office (SCAO) for review, and stayed the 2018 case pending the SCAO's decision. At the same hearing, the court denied the motion to disqualify the

---

[3] See *In re Namy*, unpublished order of the Court of Appeals, entered June 19, 2019 (Docket No. 347114).

defense lawyer in the 2017 case. Chapel Hill and Mixer's motion to dismiss, or for surety, in the 2017 case was set for a later date. Plaintiff then filed yet another motion in the 2017 case seeking a "default judgment" and a "jury trial." Additionally, plaintiff responded to the motion to dismiss or for security bond several days before the hearing date by filing a "supplemental response," asserting that the motion should be denied because Chapel Hill and Mixer had violated the Bylaws and the confidentiality of the facilitation proceedings.

When Chapel Hill and Mixer's motion to dismiss in the 2017 Case came before the court, the trial judge first denied plaintiff's latest motion for a "default judgment" as an untimely motion for summary disposition. Next, the court addressed the motion to dismiss or for a security bond. The court noted that dismissal is a "drastic" action and instead ordered security costs to be posted, stating:

> What I will do is order security for costs to be posted, and I will set that in the amount of $50,000. I will give plaintiff 21 days to post security for costs, and if it's not done by then – that would be on February 13th – then I will enter an order dismissing the case with prejudice.

Thereafter, plaintiff filed a motion to disqualify the trial judge in the 2017 case. Six days after ordering security, the trial judge entered identical orders of re-assignment in both the 2017 and the 2018 cases, indicating that the disqualification in both cases was because of "plaintiff's perception of bias."

The next day was the date the security bond was due in the 2017 case, but instead of posting the security bond, plaintiff moved for reconsideration. Plaintiff argued that the trial judge had committed palpable error by granting the security bond because Chapel Hill and Mixer showed no need for the bond, it was untimely sought 20 months into litigation and on the eve of trial, the court had already determined the remaining claim was proper for trial, and plaintiff could not afford the bond. Plaintiff attached an affidavit attesting that posting the bond would be an extreme financial hardship because she was unemployed and had no assets. Attached to the affidavit was an e-mail exchange in which plaintiff informed a bondsman that she was jobless, had no assets, and could make no down payment. The bondsman responded by informing plaintiff that she did not qualify. Chapel Hill and Mixer moved to dismiss on the basis that plaintiff had failed to abide by the order requiring that security be posted.

When the parties appeared before the newly assigned trial judge, he denied reconsideration of the order for a security bond and dismissed the case with prejudice. The new judge stated:

> I do find it virtually impossible to understand how a claim such as this could be drug out this long . . . .
>
> I do remember [the original judge] making a finding that this was extremely essentially – very litigious. There were scads of motions filed. But at the very bottom line the Court finds the Plaintiff's behavior in knowingly violating the Court's orders and this – there have been two occasions for sure. My understanding there was some refusal way back when to participate in the mediation which the Court had ordered. But specifically the Plaintiff was ordered to pay her share of

the initial mediation which was $4,426.66 on or before February 21. She willfully refused to do so. She also was ordered to post a $50,000 surety bond. I completely agree with the defense that the claimed defense to that was woefully inadequate. There was essentially what her affidavit – what her affidavit said essentially was "I don't have a job, I don't have any money, and I can't pay." There was nothing, nothing to further talk about what assets they have, what assets were available, whether there were attempts to take mortgages on the condominium, whether there were attempts to make bank loans. All she did was say "I sent an email to a bonds person and said, 'I'm a person who doesn't have a job, doesn't have an income, has no assets, do you make loans to those people'?" Which you wonder what the answer was. So I find . . . that the Plaintiff willfully disobeyed this Court's order, [the original judge's] order, [the original judge's] order which is now part of this file that I have. I dismiss the case with prejudice. With prejudice the case is dismissed for failure to obey the court's orders. Repeatedly.

Plaintiff filed multiple motions following dismissal, objecting to the form of the order, asking for reconsideration, and challenging the original judge's disqualification, among other requests. Ultimately, these motions were all denied, ending the 2017 case.

Thereafter, the new judge lifted the stay in the 2018 case and ordered the parties to file briefs. At the ensuing motion hearing, the judge took Chapel Hill and Mixer's motion to dismiss under advisement, and, after this Court issued its order denying plaintiff's request for a writ for superintending control,[4] the new judge entered an order dismissing the 2018 case, reasoning that the claims lacked merit and that they were barred by res judicata.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Plaintiff argues that the trial court erred by granting Mid-Century summary disposition under MCR 2.116(C)(8).[5] We review de novo a trial court's decision on a motion for summary

---

[4] *In re Namy*, unpublished order of the Court of Appeals, entered June 19, 2019 (Docket No. 347114).

[5] Mid-Century requests that this Court dismiss plaintiff's appeal as to them because it is moot. Mid-Century explains that because the parties allegedly entered into a written settlement agreement, the appeal is barred. However, Mid-Century did not move for enforcement of the alleged settlement before the circuit court. Therefore, there is no decision of the circuit court for this Court to review. Instead, Mid-Century asks the Court to enforce the settlement—which would effectively require this Court to make findings of fact as to whether the parties entered into a settlement agreement—and dismiss this appeal. Because Mid-Century's request is not an appeal from a final order and the matter is not an original action over which this Court has jurisdiction, the claim is not properly before the Court. See MCR 7.203.

disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint," and "may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (quotation marks and citation omitted).

## B. ANALYSIS

The trial court granted summary disposition under MCR 2.116(C)(8), reasoning that plaintiff had failed to state a claim for breach of contract because plaintiff was neither a party to, nor a third-party beneficiary of, the policy between Mid-Century and Chapel Hill. "Only intended, rather than incidental, third-party beneficiaries may sue when a contractual promise in their favor has been breached." *Kisiel v Holz*, 272 Mich App 168, 170; 725 NW2d 67 (2006). "A third person cannot maintain an action on a simple contract merely because he or she would receive a benefit from its performance or would be injured by its breach." *Id*. at 171. In determining third-party beneficiary status, courts look to the contractual language, using an objective standard, to determine "whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status." *Schmalfeldt v N Pointe Ins Co*, 469 Mich 422, 428; 670 NW2d 651 (2003). "A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person." *Id*.

Here, although she had a copy of the insurance policy between Chapel Hill and Mid-Century, plaintiff did not attach it to her complaint. Further, plaintiff made no specific factual allegation that she was a third-party beneficiary of the policy. Paragraph 42 of the complaint alleges that she was a "beneficiary" of that policy, but the complaint is devoid of any well-pleaded factual allegations highlighting that the policy undertook a promise directly to plaintiff or to a class of persons to which plaintiff belonged. And, even if paragraph 42 could be considered as raising a third-party beneficiary theory of recovery solely by its use of the term "beneficiary," plaintiff failed to include in her pleadings any specific factual allegations that would support the assertion that she is a third-party beneficiary. "[C]onclusory statements unsupported by factual allegations are insufficient to state a cause of action." *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 544; 730 NW2d 481 (2007). Further, plaintiff admitted that the insurance policy did not identify her by name or otherwise. Plaintiff, therefore, failed to state a claim on which she could recover and the court did not err by granting summary disposition for Mid-Century.

Plaintiff's remaining arguments related to the (C)(8) motion are without merit. A review of the record shows that the court did not consider evidence outside the pleadings, nor did the court engage in impermissible fact-finding. We also decline to reverse based on plaintiff's public-policy argument. Plaintiff asserts that, as a matter of law, unit owners of condominium associations should be considered third-party beneficiaries of the association's insurance policy because, absent that status, owners cannot invoke the policy. Yet, plaintiff cites no authority that would permit the court to adopt such a rule and plaintiff's complaint in this regard is better lodged with the Legislature.

## III.  APPLICATION OF MCR 2.109

### A.  STANDARD OF REVIEW

Plaintiff argues that the trial court abused its discretion by ordering a $50,000 security bond.  "It is within a trial court's discretion to order security, and we will not reverse unless the imposition of security is an abuse of that discretion." *Farleigh v Amalgamated Transit Union*, 199 Mich App 631, 633; 502 NW2d 371 (1993).  An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).  "A trial court's determinations regarding the legitimacy of the claims and a party's financial ability to post a bond are findings of fact that are reviewed only for clear error." *Attorney General v Oakland Disposal, Inc*, 226 Mich App 321, 333; 573 NW2d 300 (1997).  Issues concerning the interpretation of court rules are reviewed de novo. *Stenzel v Best Buy Co*, 320 Mich App 262, 274; 906 NW2d 801 (2017).

### B.  ANALYSIS

The court rule governing imposition of surety bonds in civil cases, MCR 2.109, provides in relevant part:

> (A) Motion.  On motion of a party against whom a claim has been asserted in a civil action, if it appears reasonable and proper, the court may order the opposing party to file with the court clerk a bond with surety as required by the court in an amount sufficient to cover all costs and other recoverable expenses that may be awarded by the trial court . . . .  The court shall determine the amount in its discretion.

Generally, security is not required under this court rule unless a substantial reason exists for requiring it.  *Farleigh*, 199 Mich App at 634.  "While a plaintiff's poverty alone is not a substantial reason to order security, the assertion of a tenuous legal theory of liability may constitute a substantial reason." *Id*.  Likewise, a substantial reason to impose the bond may exist if there is reason to believe that a party's allegations are groundless or unwarranted, despite the fact that the claim cannot be summarily dismissed. *Id*.  Legitimacy of an action, however, is not determinative as the court rule allows courts a "large degree" of discretion in the matter of imposing a security bond. *Id*. at 635.

In this case, the primary goal of Chapel Hill and Mixer's motion was to obtain a dismissal as a sanction for plaintiff's failure to participate in the facilitation proceedings and her obstruction of facilitation.  In light of plaintiff's history of failing to abide by the court rules and the court's orders, the court would have been well within its discretion to dismiss the case outright.  The court, however—noting that it found Chapel Hill and Mixer's version of events during the facilitation more credible—chose to grant plaintiff another chance to prove her case at trial by granting Chapel Hill and Mixer's alternative request for a security bond.  The court required plaintiff to post a $50,000 security bond, plus the amount of the unpaid facilitator's fees, by February 13, 2019 or face dismissal.

Plaintiff contends that MCR 2.109 cannot be used as a sanction for a party's conduct during facilitation. However, by its plain terms, MCR 2.109 does not exclude a litigant's proclivity for disobeying the court's orders and thwarting meaningful facilitation as a substantial reason for granting security. Rather, the court rule provides that a court may provide security if it is "reasonable and proper." MCR 2.109(A). Because the plain language of the court rule does not prohibit use of security in this manner, we conclude that imposition of a bond for this reason does not automatically render the security an abuse of discretion so long as a substantial reason exists for its imposition.

Turning to the merits and keeping in mind that the court is given wide discretion to impose security, we conclude that security was reasonable and proper given that Chapel Hill and Mixer's legal fees had surpassed $60,000 as a result of plaintiff's litigation tactics and given that plaintiff had a history of refusing to pay costs. A review of the record up until the motion shows that plaintiff's conduct was designed to forestall trial and obstruct meaningful facilitation. In particular, as outlined in the statement of facts, plaintiff filed multitudinous motions—sometimes repeatedly raising and re-raising the same issues—delayed her deposition repeatedly, and initiated actions in other forums. Considered together, plaintiff's actions appear to be an attempt to extract a substantial settlement. Imposition of the bond, then, in light of plaintiff's conduct, the fees that Chapel Hill and Mixer had incurred as a result, as well as plaintiff's refusal to pay the facilitator, was a reasonable measure to get the case to trial or otherwise conclude it and to ensure that Chapel Hill and Mixer's legal costs and fees would actually be paid if the matter went to trial. Accordingly, we conclude that a substantial reason existed for the bond and that the court's decision to impose the bond was within the principled range of outcomes.

On appeal, plaintiff argues that the security bond was an abuse of discretion because it was not timely pursued. Plaintiff quotes an excerpt from *Hall v Harmony Hills Recreation, Inc*, 186 Mich App 265, 269; 463 NW2d 254 (1990), stating "the general rule set forth in an early Michigan Supreme Court case that an application for security should be made as early as practicable,] e.g., 'with or soon after [the] answer.' *Goodenough v Burton*, 146 Mich 50, 52; 109 NW 52 (1906)." In *Hall*, the Court concluded that the defendant's motion for security was untimely when it was filed "over two years after the complaint, . . . over nine months after the first trial . . . , [and] defendant ha[d] not put forth any valid reason to support a finding that it filed the motion for security as soon as practicable." In overturning the security bond, however, the *Hall* Court did not rely on the fact that the motion was untimely, but instead concluded that the plaintiff had a legitimate claim and financial inability to post the bond. *Hall*, 186 Mich App at 273. Even assuming for purposes of this argument that MCR 2.109 contains such a timing requirement (the plain text does not), application of such a rule would not change the result. Chapel Hill and Mixer's motion for security was filed as soon as practicable—they did not know at the start of litigation that plaintiff would obstruct meaningful facilitation and, in fact, did not know that to be the case until the facilitation fell apart. Given that the request for security was based on those facts, the motion was not untimely.

Plaintiff also asserts that the security should not have been issued because she had a legitimate claim. This argument is in reference to MCR 2.109(B), which provides an exception to otherwise allowable security if "the party's pleading states a legitimate claim *and* the party shows by affidavit that he or she is financially unable to furnish a security bond." (Emphasis added). However, even assuming plaintiff had a legitimate claim, she did not show that she was unable to

furnish the bond. Plaintiff submitted the required affidavit with her motion for reconsideration of the security order. That affidavit was baldly conclusory; it asserted that plaintiff was unemployed and had no assets. Plaintiff provided no bank statements, and no evidence regarding the earnings of her husband or whether she had explored leveraging her condominium, valued between $150,000 and $200,000. Consequently, plaintiff did not meet her burden of establishing that she could not afford the bond. See *Quinto v Cross & Peters Co*, 451 Mich 358, 371-372; 547 NW2d 314 (1996) (indicating that a conclusory affidavit is insufficient to establish a genuine issue of fact).

Finally, the amount of security ordered was not an abuse of discretion. Chapel Hill and Mixer asserted in their motion that they had incurred over $65,000 in costs and fees at the time the motion was filed. Before the court could even hear the motion to dismiss or for security, plaintiff had filed four additional motions and a complaint seeking a writ for superintending control. On appeal, plaintiff cites to caselaw overturning security bonds that exceeded the amount needed to secure payment and suggests that the security ordered was improper because it was well-above that ordered in other cases. Plaintiff misses, however, that the amount of the bond is determined on a case-by-case basis. Plaintiff also makes no attempt to show how the amount of security ordered in this case exceeded Chapel Hill and Mixer's actual costs, and we discern no basis to make that determination given the copious filings to which they were subjected.

Finally, plaintiff asserts that imposition of security denied her the right to a jury trial, deprived her of her claim without an opportunity to be heard, and violated equal protection by denying her access to the courts based on her lack of financial resources. Plaintiff's briefing is insufficient on these points: she makes the above-mentioned conclusory assertions, follows-up with broad statements of constitutional principles—failing to even assert that her claim is a vested right—and then makes no attempt to apply these principles to her case, or explain how her rights were violated. The single case to which plaintiff does connect her conclusory assertions is *In re 2000 GMC Denali & Contents*, 316 Mich App 562; 892 NW2d 388 (2016), but she merely asserts, without explanation, that the constitutional issues at play here are "not unlike those" in that case. *GMC Denali* did not, however, involve a security bond issued under MCR 2.109; rather, it involved the civil asset forfeiture statute, which afforded a plaintiff's redress in the courts when property was seized only if the plaintiff could post a bond; absent the bond, a court lacked jurisdiction to hear the case and the plaintiff was without remedy. *Id*. at 579-581. Given that an exception to security under MCR 2.109 exists if a plaintiff can show that they cannot afford the bond and their claim is legitimate, this matter is not parallel to *GMC Denali*. In light of plaintiff's cursory treatment of these constitutional claims we consider them abandoned. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

IV. DISCOVERY SANCTIONS

A. STANDARD OF REVIEW

Plaintiff next argues that the trial court abused its discretion when it struck her expert witnesses and the new claims raised in her amended complaint. She also argues that the trial court

erred by ordering facilitation. "The decision whether to allow a party to add an expert witness is within the discretion of the trial court." *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991). "Whether to impose discovery sanctions is entrusted to the discretion of the trial court." *Local Area Watch v Grand Rapids*, 262 Mich App 136, 147; 683 NW2d 745 (2004). Thus, imposition of "[d]iscovery sanctions are reviewed for an abuse of discretion." *Dean v Tucker*, 182 Mich App 27, 32; 451 NW2d 571 (1990).

## B. ANALYSIS

Plaintiff asserts that the trial court abused its discretion by striking her expert witnesses because its decision was contrary to Michigan precedent. A court may preclude a party from introducing expert witnesses as a sanction for failing to follow discovery orders. MCR 2.313(B)(2)(b). However, "the mere fact that a witness list was not timely filed does not, in and of itself, justify the imposition of such a sanction." *Dean*, 182 Mich App at 32. The following nonexhaustive factors are relevant to considering whether a particular discovery sanction is appropriate:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice. [*Id*. at 32-33.]

Based on the record before this Court, it cannot be said that its decision to strike plaintiff's expert witnesses was an abuse of discretion. First, given the nature of plaintiff's claims, the need for expert testimony to establish the standard of care regarding maintenance of the common elements, as well as damages, should have been obvious to plaintiff's lawyer. Yet, despite moving to amend the complaint twice during the discovery period (the latter amendment including claims against parties the court had already dismissed), plaintiff did not disclose any expert witnesses in either her witness list or her answers to interrogatories. Instead, plaintiff stated in a letter to Chapel Hill and Mixer that she did not intend to rely on any expert witnesses. Then, a week before discovery was set to close and four months after witness lists were due (at which point plaintiff had not even been deposed because of plaintiff's own delays), plaintiff filed a supplemental witness list, without leave of court, containing the names and qualifications of expert witnesses, nor did it include any information regarding the content of these experts' testimonies. Plaintiff offered no reason to explain why she had not provided their names earlier. There is no indication that the failure was inadvertent; rather, plaintiff's course of conduct suggests a pattern intended to deliberately drag out the litigation. And the addition of expert witnesses at this point would have prejudiced Chapel Hill and Mixer because it would not only have required plaintiff to first tease out what their testimony would be, possibly requiring another amendment of the complaint, but it would also have required an extension of discovery for Chapel Hill and Mixer to obtain rebuttal

experts. Based on this record, the court's decision to strike plaintiff's experts was within the range of principled outcomes.[6]

Plaintiff next argues that the circuit court abused its discretion by dismissing her new causes of action as a discovery sanction for plaintiff's refusal to answer questions related to those claims at her deposition. Plaintiff maintains that her lawyer did not violate any order of the court, that her lawyer acted in good faith given that discovery had not been reopened, and that dismissal was disproportionate because the error could have been cured. "Where the sanction is . . . dismissal of the plaintiff's action, the sanction should be exercised cautiously." *Dean*, 182 Mich App at 32. The above-listed factors from *Dean* are considered in determining whether the discovery sanction of dismissal is appropriate. Further, "the record should reflect that the trial court gave careful consideration to the factors involved and considered all of its options in determining what sanction was just and proper in the context of the case before it." *Id*. "[T]he sanction of [dismissal] should be employed only when there has been a flagrant and wanton refusal to facilitate discovery and not when failure to comply with a discovery request is accidental or involuntary." *Traxler v Ford Motor Co*, 227 Mich App 276, 286; 576 NW2d 398 (1998).

The circuit court allowed plaintiff to amend her complaint to add the four causes of action more than a year after the original complaint was filed. At this point, discovery had closed with the exception of plaintiff's deposition and Mixer's deposition; Mixer was set to be deposed only after plaintiff was deposed. As noted above, obtaining plaintiff's deposition had been problematic, with plaintiff thrice rescheduling. Other aspects of discovery were similarly difficult, including plaintiff's attempt to add expert witnesses, without any indication of their opinions, at the last minute and despite informing the defense lawyer that she would not use experts at trial, as well as plaintiff's failure to serve discovery on Chapel Hill at the outset of litigation and then filing a motion for sanctions against Chapel Hill for failing to respond to that discovery request. Thus, by the time the trial court granted the motion for leave to amend plaintiff had a demonstrated history of delay and disregard for the court's scheduling orders. In light of plaintiff's history, the court ordered plaintiff to file her amended complaint by June 15th.

Plaintiff's deposition commenced a day after that hearing, at which point plaintiff had not yet filed the second amended complaint. At the deposition, plaintiff's lawyer instructed plaintiff not to answer any questions related to the new claims because the amended complaint had not yet been filed and the questions were, thus, outside the scope of the deposition. Plaintiff's lawyer informed the defense lawyer that plaintiff would not answer questions related to the new claims

---

[6] Plaintiff suggests that the outcome of this case is controlled by *Levinson v Sklar*, 181 Mich App 693; 449 NW2d 682 (1989). In that case, this Court held that a circuit court abused its discretion by striking an expert that was added after discovery and two months before trial. *Id*. at 698-699. The facts of *Sklar* are significantly different from this case, however. In *Sklar*, the plaintiff sought to substitute one expert witness for another expert witness, who had been timely disclosed but had not been deposed, whereas in this case plaintiff stated her intent not to rely on any experts at trial and Chapel Hill and Mixer were not on notice of the substance of any expert testimony. In light of the significant differences, *Sklar* does not control.

unless Chapel Hill and Mixer agreed to reopen discovery, stating, "We can stipulate to reopening of discovery and give me my experts back." The next day, plaintiff filed her amended complaint adding the four new claims. On Chapel Hill and Mixer's motion to dismiss, the court dismissed the new claims, noting that plaintiff had engaged in a "gross abuse of the discovery process."

Under these circumstances, the court's decision to strike the new claims was not outside the range of principled outcomes. Contrary to plaintiff's claim on appeal, her lawyer's statements during the deposition do not reflect a good faith belief that plaintiff's deposition was limited to the claims in the original complaint. Plaintiff's lawyer intentionally sought to withhold plaintiff's testimony in order to strong-arm Chapel Hill and Mixer into reopening discovery and allowing the already excluded expert witnesses—actions that would likewise further delay completion of plaintiff's deposition. In sum, plaintiff lawyer's flagrant refusal to facilitate the deposition testimony of her client a year into the litigation by directing her client to not answer relevant questions—considered in conjunction with plaintiff's history of delay and gamesmanship— warranted the court's decision to dismiss the newly-added claims.

Plaintiff next asserts that the circuit court, by ordering facilitation, deprived her of her right to a jury trial and wrongfully reopened discovery only as to Chapel Hill and Mixer. Plaintiff asserts that the circuit court's order, which required her to post a security bond as well as $4,426 in facilitator fees deprived her of her constitutional right to a jury trial, especially when considering that damages was the only element of her claim left to determine.

Plaintiff's argument is both factually and legally wrong. First, the issue of damages was not the only issue to be decided; the circuit court denied summary disposition on plaintiff's contract claim, leaving open the question of liability as to that claim. Second, discovery was not reopened only for Chapel Hill and Mixer; the court made no discovery order and the facilitator sought an inspection of the property only for purposes of conducting the mediation. Finally, facilitation is a form of alternative dispute resolution that all civil cases in Michigan are subject to, unless otherwise directed by statute or court rule. MCR 2.410(A). In the event facilitation fails, a jury trial is available. Here, the facilitation failed and, on Chapel Hill and Mixer's motion to dismiss for refusal to participate in the facilitation, the court entered a security bond in lieu of dismissal. When plaintiff did not post the bond, her case was dismissed. The record, therefore, does not support plaintiff's suggestion that the court's decision to order facilitation deprived her of her right to a jury trial. Rather, plaintiff's own actions during the litigation led to imposition of the bond and plaintiff's failure to post the security ultimately led to dismissal.

V. JUDICIAL DISQUALIFICATION

Plaintiff filed motions seeking to disqualify the original judge in both the 2017 and the 2018 cases. Plaintiff argues that her due-process rights were violated when the original judge refused to hear or rule on her motion for disqualification in the 2017 case and instead, six days later, sua sponte re-assigned the case to a different judge. She also argues that her rights were violated when the court entered an order disqualifying herself from hearing the 2018 case and, using the re-assignment process, assigned the case to another judge.

At the outset, we note that plaintiff effectively obtained the relief she sought—a disqualification of the original judge and re-assignment to a different judge—when the original

-14-

judge entered orders of re-assignment disqualifying herself from the cases because of "plaintiff's perception of bias." Because plaintiff prevailed on her motions to disqualify the judge, whether plaintiff has appellate standing to challenge the re-assignment is called into question. "To maintain an appeal, a person must ordinarily be 'aggrieved' by the lower court's decision." *Spires v Bergman*, 276 Mich App 432, 441; 741 NW2d 523 (2007). "This requirement stems from the fact that this Court's 'judicial power,' established by Const 1963, art 6, § 1, extends only to a genuine case or controversy between the parties, one in which there is a real, not a hypothetical, dispute, and one in which the plaintiff has suffered a particularized or personal injury." *Manuel v Gill*, 481 Mich 637, 643; 753 NW2d 48 (2008) (Quotation marks and citation omitted). "An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury . . . ." *Federated Ins Co v Oakland Co Rd Comm'n*, 475 Mich 286, 291; 715 NW2d 846 (2006). Thus, "a litigant on appeal must demonstrate an injury arising from . . . the actions of the trial court . . . ." *Id*. at 292. This requirement extends to a prevailing party, which will "possess appellate standing if, despite the judgment in its favor, it has nonetheless suffered a concrete and particularized injury as a result of the [lower court's decision]." *Manuel*, 481 Mich at 644. Conversely, "[a] party who could not benefit from a change in the judgment has no appealable interest." *Id*.

Here, plaintiff alleges that her due-process rights were violated when the judge used the re-assignment rules instead of ruling on and making findings regarding plaintiff's motion to disqualify. Plaintiff suggests that the court's conduct was a nefarious abuse of the re-assignment rules, intentionally designed to avoid review of the motion to disqualify. In so arguing, however, plaintiff does not identify any concrete particularized harm that she suffered stemming from the lack of a hearing, instead invoking only vague notions that her due-process rights were implicated. Thus, based on this record, we conclude that plaintiff lacks appellate standing to appeal the circuit court's disqualification order.

Even if plaintiff did have standing, we discern no error warranting reversal. Plaintiff's theory appears to be that the original judge used the re-assignment rules to deprive plaintiff of a hearing on the motion, which would have allegedly established which orders should have been voided because of the original judge's animus. Yet, the record reflects no misuse or violation of the re-assignment rules. While plaintiff asserts that a motion for judicial disqualification requires a referral to another judge for a de novo hearing, such a hearing is only required if a judge denies the motion for disqualification. See MCR 2.003(D)(3)(a). Here, the original judge granted it, so plaintiff was not entitled to a hearing under the court rules. Indeed, plaintiff fails to cite any authority indicating that a hearing is required on a motion for disqualification when a judge grants the motion. Likewise, to the extent plaintiff claims that the re-assignment order contains indicia of impropriety, this argument is also without support in the record. Given the chronology of events and the stated reason for re-assignment, its sole impetus was plaintiff's motion to disqualify. The order did contain some ministerial errors, but those errors do not create a reasonable inference that the court was denying the motion simply to avoid review of the motion or that the court was selectively directing the case to any particular judge.

In any case, even if the court entered the re-assignment order to "avoid" a hearing where it would make findings on the motion, plaintiff has not explained how this alleged error adversely affected the outcome of the case or otherwise affected her substantial rights. Plaintiff appears to suggest that some of the original judge's orders would have been struck as void (which ones, she

does not identify) if such a hearing had been held; yet, such a contention is speculative given that it presumes a finding of judicial impropriety as to those unidentified orders. In short, plaintiff has failed to show that the supposed error was not harmless and, therefore, relief is not warranted. See MCR 2.613(A) (indicating that harmless error does not require reversal).

## VI. ADDITIONAL ERRORS

Plaintiff next vaguely argues that she was denied a jury trial on the disputed facts related to plaintiff's cause of action for negligent maintenance of the common elements. She contends that Chapel Hill and Mixer "manipulated the narrative" and avoided the evidence and the merits. And that, through this course of action, Chapel Hill and Mixer "ensnared" the lower court into denying plaintiff due process. While the question presented for plaintiff's final argument in Docket No. 349976 appears to relate to the circuit court's decision to grant summary disposition for Chapel Hill and Mixer on plaintiff's negligence claim, the argument portion of her brief does not actually identify a ruling of the court that was erroneous. Rather, plaintiff uses the last pages of her brief to attack the defense lawyer's allegedly "manipulative" defense tactics. Review of the record does not support this allegation. In any case, plaintiff has not identified any reviewable decision relating to the defense lawyer's conduct and, thus, has also failed to identify any error requiring reversal.

Plaintiff also argues that, in the 2018 case, the trial court erred by dismissing her claim under MCR 2.116(C)(7) (res judicata). However, plaintiff's discussion of res judicata fails to cite even a single legal authority. It is insufficient to simply announce a position on appeal without explanation or citation to legal authority; consequently, we consider the claim abandoned. See *Yee*, 251 Mich App at 406.

Affirmed. Having prevailed, defendants-appellees may tax costs. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

-16-