*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETITION OF MONTCALM COUNTY TREASURER FOR FORECLOSURE.

---

MONTCALM COUNTY TREASURER,

Petitioner-Appellant,

v

AUSTIN RIVERA, Personal Representative of the ESTATE OF THOMAS E. RIVERA, BOBBY JONES, and JAMIE JONES,

Claimants-Appellees,

and

COMERICA BANK,

Other Party.

FOR PUBLICATION
October 20, 2025
8:48 AM

No. 370785
Montcalm Circuit Court
LC No. 2021-027868-AA

---

Before: K. F. KELLY, P.J., and PATEL and FEENEY, JJ.

K. F. KELLY, P.J.

In this case involving the distribution of remaining proceeds following tax-foreclosure sales, petitioner appeals by right the order distributing proceeds to claimants Austin Rivera, as Personal Representative of the Estate of Tomas Rivera (the "Estate"); and Bobby Jones and Jamie Jones (collectively, "the Joneses").[1] The order also determined that petitioner was not entitled to attorney fees incurred from postsale proceedings involving the disbursement of remaining proceeds. This case raises an issue of first impression regarding the interpretation of the General Property Tax Act ("GPTA"), MCL 211.1 *et seq.*, namely, whether a foreclosing governmental unit ("FGU") is entitled to recover

---

[1] This opinion will refer to individual claimants by their first names.

-1-

attorney fees and costs incurred for postsale proceedings. We conclude that MCL 211.78m and MCL 211.78t do not allow an FGU to recover attorney fees and costs incurred for litigating issues involving the reimbursement of remaining proceeds. Accordingly, finding no errors warranting reversal, we affirm.

## I. BACKGROUND

## A. STATUTORY FRAMEWORK

This case involves interpretation of MCL 211.78t, which "is the exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds" arising from tax-foreclosure sales. MCL 211.78t(11). An overview of the applicable caselaw and statutory framework is helpful to framing the issues on appeal. This Court had recent opportunity to summarize the relevant legal background in *In re Petition of Kent Co Treasurer for Foreclosure*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket Nos. 363463, 363766, 363808, 364114), which we reiterate here:

> The Michigan Supreme Court held in *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 483-484; 952 NW2d 434 (2020), that former owners of properties sold at tax-foreclosure sales for more than what was owed in delinquent real-property taxes, interest, penalties, and fees had a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties. This right continued to exist after fee simple title to the properties vested with the foreclosing governmental unit (FGU). The FGU's retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of plaintiffs' properties under Article 10, § 2 of [Const 1963], and the former owners were entitled to just compensation in the form of the return of the surplus proceeds.

> Before our Supreme Court decided *Rafaeli*, the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, did not provide former property owners a right to claim surplus proceeds from a tax foreclosure sale. Hence, when our Supreme Court announced in *Rafaeli* that the GPTA was unconstitutional as applied to former property owners whose properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties to the extent the GPTA permitted FGUs to retain those surplus proceeds, there was no mechanism in the GPTA by which former property owners could recover their surplus proceeds.

> In response to *Rafaeli*, the Michigan Legislature passed 2020 PA 255 and 2020 PA 256, which were given immediate effect, on December 22, 2020. These acts were intended to codify and give full effect to the right of a former holder of a legal interest in property to any remaining proceeds resulting from the foreclosure and sale of the property to satisfy delinquent real property taxes under the [GPTA] . . . as recognized by the Michigan supreme court in *Rafaeli, LLC v Oakland County* . . . . At issue in the current appeal is MCL 211.78t, a provision added to the GPTA by 2020 PA 256. [*Kent Treasurer*, ___ Mich App at ___; slip op at 3-4 (quotation marks and some citations omitted; alterations in original).]

-2-

At issue in the present appeal are the subsections of MCL 211.78t that govern the substantive requirements to claim remaining proceeds. Under MCL 211.78t(2), a property owner who intends to claim any remaining proceeds in connection with a property sold at a tax-foreclosure sale after July 17, 2020, must notify the FGU of his or her intention by completing Form 5743, the notice form prescribed by the Department of Treasury, by the July 1 immediately following the effective date of the foreclosure of the property at issue. MCL 211.78t(2) further provides that the notice must be notarized and include the following:

> (a) The name of the claimant.
>
> (b) The telephone number of the claimant.
>
> (c) The address at which the claimant wants to receive service.
>
> (d) The parcel identification number of the property, and, if available, the address of the property.
>
> (e) An explanation of the claimant's interest in the property.
>
> (f) A description of any other interest in the property immediately before the foreclosure under [MCL 211.78k] held by other persons and known by the claimant, including a lien or a mortgage.
>
> (g) A sworn statement or affirmation by the claimant that the information included in the notice is accurate. [MCL 211.78t(2)(a) through (g).]

Under MCL 211.78t(3)(i), in the January immediately following the sale or transfer of the foreclosed properties, the FGU must notify claimants who filed notices of intent about the total amount of remaining proceeds or the amount of shortfall in proceeds, among other things. The FGU's notice also instructs claimants that they "must file pursuant to [MCL 211.78t(4)] a motion with the circuit court in the same proceeding in which the judgment of foreclosure of the property was effective" in order to recover any remaining proceeds. MCL 211.78t(3)(k). Claimants must file this motion between February 1 and May 15 of the year immediately following the tax-foreclosure sale. MCL 211.78t(4). In addition, claimants must indicate whether or not they held "a direct or indirect interest in the property at the time the motion [was] filed." MCL 211.78t(4)(b).

MCL 211.78t(8) also directs claimants to include the following information in their motion:

> A motion by a claimant under this section must provide the specific basis for the claimant's asserted interest in some or all of the remaining proceeds, including the claimant's interest in the property immediately before its foreclosure under [MCL 211.78k] and documentation evidencing that interest. The claimant also shall affirm that the claimant did not transfer and was not otherwise divested of the claimant's interest in the property before the judgment of foreclosure was effective under [MCL 211.78k]. If a claimant had a lien or other security interest in the property at the time the judgment of foreclosure was effective under [MCL 211.78k], the claimant shall indicate the amount owed to the claimant pursuant to the lien or security interest and the priority of the claimant's lien or security interest. The motion must be verified and include a sworn

statement or affirmation by the claimant of its accuracy. A claimant filing a motion under this section must serve a copy of the motion on the foreclosing governmental unit.

Under MCL 211.78t(5), at the end of the claim period, the FGU must file with the trial court proof of service of the notices that it sent under MCL 211.78t(3), as well as additional information for each property for which a claimant provided notice under MCL 211.78t(2). The additional information required under MCL 211.78t(5) includes, in relevant part:

> (e) The minimum bid for the property as determined by the foreclosing governmental unit under [MCL 211.78m].

> (f) The amount for which the property was sold or transferred under [MCL 211.78m].

> (g) The amount of the sale commission for the property, which must be equal to 5% of the amount under [MCL 211.78t(5)(f)].

> (h) The amount of any outstanding unpaid state, federal, or local tax collecting unit tax liens on the property immediately preceding the effective date of the foreclosure of the property under [MCL 211.78k] based on the records of the county treasurer.

> (i) The amount of any remaining proceeds, or the amount of the shortfall in proceeds if the minimum bid under [MCL 211.78m] and other fees incurred in foreclosing and selling the property exceed the amount received by the foreclosing governmental unit from a sale or transfer of the property under [MCL 211.78m]. [MCL 211.78t(5)(e) through (i).]

After the FGU files its response to a claimant's motion for disbursement, the trial court is required to "set a hearing date and time for each property for which 1 or more claimants filed a motion under this section . . . ." MCL 211.78t(9). At this hearing, the trial court "determine[s] the relative priority and value of the interest of each claimant in the foreclosed property immediately before the foreclosure was effective." *Id*. The FGU may attend this hearing, but its appearance is not required. *Id*. Claimants bear the burden of proof as to their interest in any remaining proceeds. *Id*. After requiring the payment of a "sale commission equal to 5% of the amount for which the property was sold" to the FGU, the trial court then allocates any remaining proceeds on the basis of its determination of priority among claimants. *Id*. The court then orders the FGU to pay the remaining proceeds to the claimants in accordance with the court's determination; the order "must not unjustly enrich a claimant at the expense of the public." *Id*. The FGU then has 21 days to pay the amounts ordered by the trial court to the claimants. MCL 211.78t(10).

## B. BASIC FACTS AND PROCEDURAL HISTORY

This case involves the foreclosure of multiple properties in Montcalm County, Michigan. Tomas, who died in May 2020, owned four parcels of property located on Pearl Street in Greenville, Michigan (collectively, the "Pearl Street properties"). The Joneses owned property located on Allchin Road in Fenwick, Michigan (the "Allchin Road property"). Tomas and the Joneses fell behind on their property taxes, and their respective properties were forfeited to petitioner in 2021.

Petitioner, acting as the FGU, petitioned the trial court for foreclosure of the properties in June 2021. The trial court entered a judgment of foreclosure in February 2022. After entry of the judgment of foreclosure, the Estate and the Joneses filed timely notices of intent to claim the remaining proceeds for their respective properties. As to the Allchin Road property, Comerica Bank ("Comerica") also filed a timely notice of intent to claim remaining proceeds, alleging a 2007 mortgage as the basis of its interest.

The subject properties were sold at auction in September 2022. In May 2023, the Estate and the Joneses moved for disbursement of the remaining proceeds from the foreclosure sales of their respective properties. The Estate sought $19,693.50 in remaining proceeds, and the Joneses sought $36,343.68 in remaining proceeds. Comerica also moved for the disbursement of the remaining proceeds from the sale of the Allchin Road property, but its motion was untimely.

Petitioner opposed the Estate's and the Joneses' motions for disbursement. As to the Estate, petitioner claimed it was entitled to $16,856.49 for reimbursement of the costs incurred in connection with the foreclosure of the property. Petitioner similarly contested the amount of fees and expenses it was entitled to recover with respect to the Joneses, arguing that it was entitled to $12,906.32. Petitioner further asserted that the Joneses failed to prove they possessed an interest in the remaining proceeds under MCL 211.78t(9) because they presented conflicting information about the source of their interest in the Allchin Road property in their notice of intent and motion for disbursement. Petitioner also argued that the trial court was required to consider Comerica's interest in the property before disbursing remaining proceeds so as not to unjustly enrich the Joneses.

In November 2023, the trial court held a hearing on claimants' motions for disbursement. The court primarily addressed the effect of Comerica's untimely motion for disbursement and whether petitioner was entitled to postsale expenses, including attorney fees incurred in the disbursement proceedings. The trial court took the matter under advisement and requested petitioner file a motion itemizing its claimed expenses and fees.

In its supplemental motion, petitioner argued that reading MCL 211.78m(8) and MCL 211.78t(12)(b) in harmony indicated that the Legislature intended FGUs to be reimbursed for fees and expenses incurred from the foreclosure sale through the final distribution of remaining proceeds. Petitioner asserted that its postsale expenses had increased based on the additional attorney fees incurred, which further reduced the remaining proceeds for the Pearl Street properties and the Allchin Road property. It also maintained that the Joneses failed to comply with MCL 211.78t(6)(f) because they did not provide a description of Comerica's interest in the property immediately before the foreclosure, and that an award of all remaining proceeds would unjustly enrich the Joneses. Claimants also filed a supplemental brief, arguing that MCL 211.78m(8) did not support the imposition of additional postsale fees and costs.

In a March 2024 opinion and order, the trial court found that the Estate and the Joneses were entitled to their full claims for remaining proceeds. It rejected petitioner's argument that it was entitled to reimbursement for postsale fees and concluded that there was no authority to award the requested attorney fees to petitioner. It also determined that Comerica was not a "claimant" under MCL 211.78t(12)(a) because of its untimely claim for remaining proceeds. The trial court therefore ordered petitioner to pay the Estate and the Joneses $19,693.51 and $36,343.68 in remaining proceeds, respectively.

Petitioner moved for reconsideration, reiterating that it was entitled to recover postsale fees and expenses and that the Joneses were unjustly enriched by the trial court's award of remaining proceeds because they did not comply with MCL 211.78t(6). Petitioner also contended, for the first time, that the Estate was not entitled to remaining proceeds because Austin failed to meet his burden to establish that he had legal authority to claim remaining proceeds on behalf of the Estate. The trial court denied petitioner's motion. With respect to the newly raised argument, the trial court took judicial notice of letters of authority issued in a separate Montcalm County case and concluded that the Estate was entitled to the remaining proceeds from the Pearl Street properties. This appeal ensued.

## II. STANDARDS OF REVIEW

This Court reviews de novo whether a trial court properly interpreted and applied the relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). A trial court's factual findings are reviewed for clear error. *In re Petition of Muskegon Co Treasurer for Foreclosure*, 348 Mich App 678, 687; 20 NW3d 337 (2023). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *In re Forfeiture of 2000 GMC Denali and Contents*, 316 Mich App 562, 583; 892 NW2d 388 (2016) (quotation marks and citation omitted).

## III. ANALYSIS

Petitioner argues that claimants' failure to strictly comply with the substantive and disclosure requirements of MCL 211.78t precluded their recovery of remaining proceeds and that petitioner was entitled to recover attorney fees and costs incurred for postsale proceedings. We find no errors requiring reversal in the trial court's rulings and further hold that MCL 211.78m and MCL 211.78t do not allow an FGU to recover attorney fees and costs incurred for litigating issues involving the reimbursement of remaining proceeds.

### A. COMPLIANCE WITH MCL 211.78t[2]

### 1. DISBURSEMENT OF REMAINING PROCEEDS TO THE ESTATE

Beyond its broad request for strict compliance with the substantive terms of MCL 211.78t, petitioner argues that the trial court erred by awarding the Estate remaining proceeds absent documentary

---

[2] At the outset, petitioner asks this Court to generically hold that failure to comply with the substantive and disclosure requirements of MCL 211.78t is fatal to a claim for remaining proceeds. We decline to address petitioner's unpreserved argument. In the trial court, while petitioner argued that the Joneses did not substantively comply with MCL 211.78t(6)(f), it did not maintain that strict compliance with all substantive requirements of MCL 211.78t is required to make a claim for remaining proceeds. Because petitioner failed to preserve this broad argument, this Court is under no obligation to consider the issue. Nor is this an appropriate case for this Court to exercise our discretion in reviewing the issue, given the sweeping nature of petitioner's argument, which necessarily involves the interpretation and application of MCL 211.78t provisions that are not at issue in this case. See *Compagner v Burch*, 347 Mich App 190, 211; 14 NW3d 794 (2023) (listing situations where it is appropriate for appellate courts to review unpreserved civil issues).

evidence to establish the Estate's interest under MCL 211.78t(8) and (9). We conclude that any error by the trial court was harmless with respect to disbursement of remaining proceeds to the Estate.

MCL 211.78t(9) states that the "burden of proof of a claimant's interest in any remaining proceeds for a claimant is on the claimant." MCL 211.78t(11) specifically provides that a right to claim remaining proceeds is transferable by testate or intestate succession. The transfer of a decedent's property is governed by the Estates and Protected Individuals Code ("EPIC"), MCL 700.1101 *et seq*. MCL 700.3101 provides in relevant part that, "[u]pon an individual's death, the decedent's property devolves to the persons to whom the property is devised by the decedent's last will . . . or in the absence of testamentary disposition, to the decedent's heirs . . . ." MCL 700.2103(a) provides that if there is no surviving spouse, then a decedent's entire estate passes to the "decedent's descendants by representation."

Petitioner argues that even if Austin was a claimant with respect to the Pearl Street properties, he was still required to present the necessary documents in support of his claim, which he failed to do. While Tomas's death certificate and letters of authority would have established that Austin was Tomas's heir, that Austin had a legal interest in recovering the remaining proceeds, and that Austin had the legal authority to act on behalf of the Estate, the Estate failed to file Tomas's death certificate and Austin's letters of authority in the trial court.

In support of its argument, petitioner relies on *In re Petition of Emmet Co Treasurer for Foreclosure*, 345 Mich App 692; 9 NW3d 142 (2023). In that case, this Court determined that the sole devisee to a decedent's estate had a sufficient legal interest in the property to be considered a claimant for purposes of MCL 211.78t. *Id*. at 702-703. However, while this Court concluded that the claimant was permitted to claim an interest in the remaining proceeds, it remanded the case because review of the hearing transcript revealed that the hearing "did not proceed to the presentation of proofs," and that the claimant had not been provided an opportunity to submit proofs in support of her claim to proceeds under MCL 211.78t(9). *Id*. at 703.

Similarly, in this case, the Estate did not have the opportunity to present proof in support of its claim, nor was it asked to provide such proof. Petitioner did not challenge Austin's legal interest to recover any remaining proceeds until it filed its motion for reconsideration. In fact, petitioner twice asked the trial court to enter an order awarding the Estate its remaining proceeds, minus the fees and expenses to which petitioner claimed to be entitled. Although the Estate did not provide the necessary proof of its interest in the remaining proceeds under MCL 211.78t(9), the trial court took judicial notice of the letters of authority issued in a separate Montcalm County case, which named Austin as the Estate's personal representative. Because the trial court took judicial notice of the necessary documents to prove Austin's interest in the remaining proceeds, remand is not warranted in this case.

To the extent that the trial court erred by granting the Estate's motion to disburse before being presented with the letters of authority, the error was harmless because the trial court's judicial notice of the probate case file revealed that Austin was authorized to act on the Estate's behalf. We decline to disturb the trial court's order on the basis of any such harmless error. See MCR 2.613(A) (indicating that harmless error is not a ground for disturbing a judgment or order unless refusal to do so is inconsistent with substantial justice).

## 2. DISBURSEMENT OF REMAINING PROCEEDS TO THE JONESES

Petitioner also argues that the trial court unjustly enriched the Joneses by awarding them the full amount of remaining proceeds when they failed to disclose Comerica's interest in the property under MCL 211.78t(2)(f), and failed to provide a specific basis for their interest under MCL 211.78t(8). We conclude that in light of the whole record, the trial court did not clearly err by finding that the Joneses were entitled to the full amount of remaining proceeds.

We first note that petitioner's argument—that the Joneses did not comply with the disclosure requirements of MCL 211.78t(2)(f) by failing to include a description of Comerica's interest in the Allchin Road property in its notice of intent—is unpreserved. As noted above, petitioner's argument in the trial court regarding the Joneses' disclosure obligations was limited to the fact that they did not disclose Comerica's interest in their motion for disbursement under MCL 211.78t(6)(f). Nowhere in the trial court proceedings did petitioner assert that the Joneses were noncompliant under MCL 211.78t(2)(f). Because the issue is unpreserved, we decline to address it. See *Tolas*, 347 Mich App at 289 ("If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue."). Further, petitioner appears to have abandoned its argument regarding MCL 211.78t(6)(f) on appeal by failing to brief the issue. See *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) (noting that a party abandons an issue on appeal by failing to brief its merits).

Regardless, the trial court did not err by impliedly rejecting petitioner's argument that the Joneses were barred from recovering remaining proceeds because their motion to disburse did not include a description of Comerica's mortgage on the Allchin Road property. MCL 211.78t(6)(f) requires claimants to provide in their motion to disburse "[a] description of any other interest in the property, including a lien or a mortgage, immediately before the foreclosure under [MCL 211.78k] held by any other person or entity and known by claimant." Notably, MCL 211.78t(6) does not apply to the Joneses. MCL 211.78t(6) applies to property owners whose properties were foreclosed before July 18, 2020, and the Joneses' property was foreclosed in 2022. See MCL 211.78t(1)(b)(*ii*) (providing that claimants must proceed pursuant to MCL 211.78t(6) if their property was foreclosed before July 18, 2020). The provision relevant to the Joneses' motion to disburse remaining proceeds was MCL 211.78t(4), which did not require the same disclosure be made. Accordingly, we discern no error by the trial court on this basis.

Petitioner next contends that the Joneses did not provide the specific basis of their interest in the remaining proceeds under MCL 211.78t(8) because they submitted conflicting information about the source of their interest in the Allchin Road property. Petitioners point out that the Joneses' notice of intent claimed their interest in the property arose from a land contract, which listed the correct permanent parcel number ("PPN") for the property. In contrast, the Joneses' motion for disbursement attached a deed with a different PPN than the property at issue. While petitioner's observation is true, there was never any question about which property was at issue in the trial court proceedings. Further, the Joneses held an interest in the property immediately before foreclosure, timely filed Form 5743, and timely moved to disburse the remaining proceeds. To the extent that Comerica's claimed interest in the property muddied the issue, the trial court found that Comerica was not a claimant because it did not file a timely motion to disburse. In light of the whole record, and given that there was never any serious confusion about which property was foreclosed or about the Joneses' interest in the foreclosed property, the trial court appeared unconcerned that the Joneses attached the wrong deed to their motion to disburse. Under these circumstances, this Court is not left with a definite and firm conviction that the trial court erred by impliedly finding that the Joneses met their burden to prove their interest in the remaining proceeds.

Petitioner finally asserts that the trial court's disbursement unjustly enriched the Joneses at the expense of the public. The trial court disagreed, concluding that "[a]ny unjust enrichment claim that might be raised would be at the expense of Comerica Bank, not the public." In *Rafaeli*, 505 Mich at 483, our Supreme Court rejected the notion that claimants could collect more than the proceeds that remained from the sale of their foreclosed property after the payment of their taxes, penalties, interests, and fees. MCL 211.78t(12)(b) deducted additional items from the sale proceeds, including the amount of the property's minimum bid and any additional fees that could have been included in the minimum bid, but were not. As defined by MCL 211.78t(12)(b), the Joneses did not collect more than the "remaining proceeds." Therefore, they did not "tak[e] away money from the public as a whole," nor did they benefit from their tax delinquency per se. *Rafaeli*, 505 Mich at 483. If the Joneses benefited at all, then it was from Comerica's failure to timely move in the trial court for the disbursement of any remaining proceeds to which it had a valid claim, even after petitioner notified it of the deadline for filing such motion.

Moreover, as this Court recently pointed out:

MCL 211.78t(9) itself lists examples of how such unjust enrichment could occur. For instance, MCL 211.78t(9) requires that an order for the payment of surplus proceeds "must provide for the payment of any unpaid amounts . . . owed by a claimant to satisfy a state, federal, or local tax collecting lien on the property . . . if the lien had priority over the claimant's interest in the property." [*In re Petition of Chippewa Co Treasurer for Foreclosure*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371576); slip op at 3.]

While petitioner's notice to the Joneses under MCL 211.78t(3) indicated that they owed "outstanding unpaid state, federal, or local tax collecting unit tax liens" on the Allchin Road property in the amount of $52,604.36, as the trial court observed, the issue "ha[d] not been mentioned by any of the parties in their arguments." Because neither party argued that a tax lien existed on the property, the trial court concluded that the indication on petitioner's notice was made in error, and declined to consider it. Petitioner does not challenge this determination on appeal, nor does it argue that the Joneses owed any unpaid amount required "to satisfy a state, federal, or local tax collecting unit tax lien" on the Allchin Road property under MCL 211.78t(9). Because petitioner has failed to demonstrate that the disbursement of remaining proceeds to the Joneses amounts to unjust enrichment under MCL 211.78t(9), the trial court did not clearly err by finding that the Joneses were not unjustly enriched at the expense of the public.

## B.  RECOVERY OF POSTSALE ATTORNEY FEES

Finally, petitioner argues that it was entitled to recover attorney fees and costs incurred during postsale proceedings. We hold that, when read in harmony, the definition of "remaining proceeds" in MCL 211.78t(12), and the definition of "minimum bid" in MCL 211.78m(16), expressly allow an FGU to deduct expenses that could have been included in the minimum bid from the remaining proceeds. However, these statutes do not authorize an FGU to recover legal expenses incurred in litigation related to the disbursement of remaining proceeds.

At issue here is whether the definition of "remaining proceeds" in MCL 211.78t(12)(b), the definition of "minimum bid" in MCL 211.78m(16)(c), and petitioner's use of tax-foreclosure proceeds as authorized by MCL 211.78m(8)(b) demonstrate legislative intent for an FGU to recover postsale fees and

expenses—particularly attorney fees—from the proceeds of a tax-foreclosure sale before distributing remaining proceeds to a claimant.[3]

Resolution of this issue involves interpretation of the relevant statutes. The primary goal of judicial interpretation of statutes is to determine and give effect to the Legislature's intent. *Mich Ed Ass'n v Secretary of State* (*On Rehearing*), 489 Mich 194, 217; 801 NW2d 35 (2011). The first criterion in determining the Legislature's intent is the specific language of the statute at issue. *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009). The Legislature is presumed to have intended the meaning it clearly expressed, *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and courts may not speculate as to the Legislature's intent beyond the language expressed in the statute, *In re MCI Telecom Complaint*, 460 Mich 396, 414-415; 596 NW2d 164 (1999). If the plain and ordinary meaning of the language is clear, then judicial construction is neither necessary nor permitted. *Pace v Edel-Harrelson*, 499 Mich 1, 7; 878 NW2d 784 (2016). When construing a statute, courts must consider the object of the statute and the harm that it was designed to remedy and give the statute a reasonable construction that best accomplishes the Legislature's purpose. *Marquis v Hartford Accident & Indemnity*, 444 Mich 638, 644; 513 NW2d 799 (1994).

MCL 211.78t(12)(b)(*ii*) expressly allows FGUs to recover certain postforeclosure fees and expenses, including legal expenses, that could have been included in the minimum amount for which a foreclosed property may be acquired, i.e., the "minimum bid." The trial court acknowledged that petitioner was allowed to recover these expenses. However, the attorney fees sought by petitioner in the trial court were incurred primarily as a result of, in petitioner's words, its "participation in [MCL 211.78t] proceedings." The trial court concluded that the statutes on which petitioner relied were not broad enough to capture recovery of those fees.

MCL 211.78t defines "remaining proceeds" as the difference between the amount paid to the FGU for the foreclosed property and the sum of the following:

> (*i*) The minimum bid under [MCL 211.78m].
>
> (*ii*) All other fees and expenses incurred by the foreclosing governmental unit *pursuant to [MCL 211.78m]* in connection with the forfeiture, foreclosure, sale, maintenance, repair, and remediation of the property *not included in the minimum bid*.
>
> (*iii*) A sale commission payable to the foreclosing governmental unit equal to 5% of the amount paid to the foreclosing governmental unit for the property. [MCL 211.78t(12)(b)(*i*) through (*iii*) (emphasis added).]

---

[3] Our opinion solely addresses whether existing statutes allow FGUs to recover attorney fees for litigating issues involving the disbursement of remaining proceeds. We do not address the issue of where FGUs get the money from to pay attorney fees and costs for such proceedings.

As the statute indicates, the term "remaining proceeds" is defined in part by reference to the "minimum bid." MCL 211.78t(12)(b)(*i*).

Under MCL 211.78m(16)(c), "minimum bid" means the minimum amount established by the FGU for which property may be sold or transferred under MCL 211.78m(1) through (3).[4] MCL 211.78m(1) implies that the FGU calculates the minimum bid before "the first Tuesday in July" immediately after the foreclosure of the tax-delinquent properties. The minimum bid must include certain amounts and may include other amounts, as follows:

> The minimum bid *must* include all of the delinquent taxes, interest, penalties, and fees due on the property, and *may* include any additional expenses incurred by the foreclosing governmental unit in connection with the forfeiture, foreclosure, maintenance, repair, or remediation of the property or the administration of this act for the property, including, but not limited to, foreclosure avoidance, mailing, publication, personal service, legal, personnel, outside contractor, and auction expenses. [MCL 211.78m(16)(c) (emphasis added).]

As noted above, an FGU may deduct from the foreclosure-sale proceeds those fees and expenses that could have been included in the minimum bid, but were not. MCL 211.78t(12)(b)(*ii*). This makes sense, given that an FGU may incur maintenance and other expenses for the foreclosed property and its sale between the first Tuesday in July and when the property is sold at auction.

Petitioner argues that reading MCL 211.78m and MCL 211.78t in harmony shows that an FGU is entitled to reimbursement of all of its presale and postsale costs before a claimant is entitled to recover remaining proceeds. In petitioner's view, these statutory provisions allow an FGU to recover attorney fees and costs incurred for litigating issues involving the reimbursement of remaining proceeds. Petitioner asserts that these expenses are related to "*the administration of this act* for the property" under MCL 211.78m(16)(c) (emphasis added). While petitioner stresses "the administration" of the GPTA under this subsection, it minimizes the second prepositional phrase, "for the property," which also modifies "administration" and identifies who or what the administration of the GPTA is intended to serve. *Id*.

In examining the relevant statutory subsections, we conclude that the phrase, "the property," references the tax-delinquent real property that was the subject of foreclosure. "The" is a definite article that functions to "indicate that a following noun or noun equivalent is definite or has been previously specified by context or by circumstance," e.g., "put [the] cat out." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 1294. Accordingly, reference to "the property" refers to specific property, not to property in general. See also *Robinson v Lansing*, 486 Mich 1, 14-15; 782 NW2d 171 (2010) (indicating

---

[4] MCL 211.78m(1) addresses the priority in which governmental entities may obtain foreclosed properties before the properties are sold at tax-foreclosure auctions. MCL 211.78m(2) describes when and how properties are sold at public auctions. MCL 211.78m(3) indicates the priority in which governmental entities may pay the minimum bid to purchase those foreclosed properties not sold under the first round of public auctions.

that when a statute refers to "the highway," a court must determine the specific or particular highway to which the statute refers).

While petitioner emphasizes that MCL 211.78m(8) requires the FGU to be reimbursed for all fees incurred in administering the GPTA on a property-by-property basis before distributing remaining proceeds to claimants, petitioner's reading again emphasizes the "administration" of the GPTA, while minimizing that the administration of the GPTA is "for the property." MCL 211.78m(16)(c). MCL 211.78m(8) repeatedly refers to "the sale of property under this section" and "each property that was sold or transferred." See, e.g., MCL 211.78m(8)(a), (b), (d), (e), (f). There can be no real dispute that "the property" referenced under MCL 211.78m is tax-delinquent property foreclosed under MCL 211.78k, absolute title to which vested in the FGU. See, e.g., MCL 211.78m(1) and (2). Therefore, it seems reasonable to conclude that the Legislature intended FGUs to be reimbursed for the administration of the GPTA for property foreclosed under MCL 211.78k, which does not extend to postsale proceedings under MCL 211.78t.

The history of the statutory definition of "minimum bid" also indicates the Legislature's intent that expenses recoverable as part of the minimum bid are those that benefit the foreclosed property. MCL 211.78m was added to the GPTA by 1999 PA 123, effective October 1, 1999. When added, MCL 211.78m(10) defined "minimum bid" to include, in relevant part, "[t]he expenses of administering the sale, including all preparations for the sale." Amendments over the next 15 years did not change this language. See 2001 PA 99; 2003 PA 263; 2006 PA 498; 2014 PA 501. However, 2020 PA 255 expanded the definition of "minimum bid" to allow for the inclusion of additional expenses, presumably arising from our Supreme Court's decision in *Rafaeli*. See 2020 PA 255, enacting § 3 (indicating that 2020 PA 255 was "intended to codify and give full effect to the right of a former holder of a legal interest in property to any remaining proceeds resulting from the foreclosure and sale of the property to satisfy delinquent real property taxes under the [GPTA]"). Despite this expansion, we do not interpret the definition of "minimum bid" to allow FGUs to recover attorney fees and expenses that do not serve the foreclosed property.

Our conclusion is particularly bolstered by the fact that MCL 211.78t suggests that the Legislature intended FGUs to have a purely administrative role in the proceedings by which remaining proceeds are disbursed. The statutory scheme for the disbursement of remaining proceeds is relatively straightforward—FGUs move the process forward by collecting, collating, and disseminating information. As described earlier, for properties sold at tax-foreclosure sales occurring after July 20, 2020, the FGU must first provide postsale notice to claimants that complies with MCL 211.78t(3). Then, after the end of claimants' period to move for disbursement of remaining proceeds in the trial court, the FGU must file with the trial court the information required by MCL 211.78t(5). Lastly, the FGU must comply with the trial court's order to disburse remaining proceeds within 21 days. MCL 211.78t(10). While the FGU may attend the hearing on the claimants' motions for disbursement, its attendance is not required. MCL 211.78t(9).

Petitioner asserts that FGUs may have to involve themselves in litigation to maintain "the integrity of the GPTA and the property tax foreclosure system." However, these goals are arguably accomplished with respect to the distribution of remaining proceeds: The FGU provides the trial court the information required by MCL 211.78t(5), and under MCL 211.78t(9), the trial court ensures that claimants meet their burden to prove their entitlement to the remaining proceeds and that its orders do not "unjustly enrich a claimant at the expense of the public." That the Legislature expressly stated the FGU was not required to

-12-

attend the hearing held under MCL 211.78t(9) suggests that the Legislature did not intend for the proceeding to be adversarial.

Finally, petitioner's observation that MCL 211.78m(8)(b) and (c) prioritize the FGU's recovery of expenses before the distribution of remaining proceeds to claimants is immaterial. These provisions do not do anything to alter the definition of "remaining proceeds," which states that FGUs are to be reimbursed for "[a]ll other fees and expenses incurred by the foreclosing governmental unit pursuant to [MCL 211.78m] in connection with the forfeiture, foreclosure, sale, maintenance, repair, and remediation of the property not included in the minimum bid." MCL 211.78t(12)(b)(*ii*).

For the foregoing reasons, while the definition of "remaining proceeds" in MCL 211.78t(12) and the definition of "minimum bid" in MCL 211.78m(16) expressly allow petitioner to deduct from remaining proceeds expenses that could have been included in the minimum bid, but were not; these statutes do not extend to the recovery of legal expenses incurred in litigation related to the disbursement of remaining proceeds.

## IV. CONCLUSION

In sum, we decline to address petitioner's unpreserved argument that a claimant forfeits his or her right to recover remaining proceeds by failing to comply with all substantive and disclosure requirements in MCL 211.78t. With regard to the trial court's disbursement of remaining proceeds, we find no errors requiring reversal. Finally, we reiterate our holding that MCL 211.78m and MCL 211.78t do not allow an FGU to recover attorney fees and costs incurred for litigating issues involving the disbursement of remaining proceeds.

Affirmed. Having prevailed on appeal, claimants may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Sima G. Patel
/s/ Kathleen A. Feeney